No. 2--07--0033        Filed:  3-11-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF MICHELLE R. POND, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Petitioner-Appellant, | ) ) | |
| and | ) ) | No. 03--D--2090 |
| DAVID G. POMRENKE, | ) ) ) | Honorable George J. Sotos, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

The marriage of petitioner, Michelle R. Pond, and respondent, David G. Pomrenke, was dissolved on November 30, 2006.  On appeal, petitioner argues that the trial court abused its discretion by not requiring respondent to contribute to her attorney fees.  We reverse and remand.

The parties were married on March 27, 1987.  They had two children during their marriage: Ryan, born on November 14, 1986, and Nicole, born on March 15, 1988.  Petitioner filed for a dissolution of marriage on September 11, 2003.  For the next few years, the parties filed numerous pleadings and at times sought attorney fees against each other.  The trial court ultimately continued all of the attorney fee requests to the trial date.

The parties eventually reached a marital settlement agreement that resolved all issues other than attorney fees. The agreement is dated November 30, 2006, and provides in relevant part as follows. The parties had engaged in many days of trial before Judge Joseph Bongiorno, prior to his transfer, and had then engaged in "ongoing and extraordinary" pretrial conferences and hearings with Judge George Sotos. The parties' children had reached the age of emancipation, and the agreement resolved the prior child support arrearage. Petitioner had recently quit her job at Dick Pond Shoes, where she last earned a gross income of $38,422.80 for 2005, to pursue a career in real estate. She had obtained her real estate license, and although she "has not yet generated any meaningful income from such new employment she is confident that soon she will do so." She was accepting the court's imputation of a $25,000 income to her. Respondent earned a gross income of $93,610 in 2005. However, his income had declined in 2006 due to less overtime, and he had earned $65,100 as of October 13, 2006. In consideration of receiving a 65% share of the marital estate, petitioner waived all claims to maintenance.

Regarding the issue of attorney fees, the agreement provides that respondent "has paid $5,000 toward [petitioner's] attorney's fees by waiving his interest in the life insurance policy ***. Balance of attorneys fees are subject to allocation by the Court and the Court specifically retains jurisdiction to make said allocation." It later reiterates that the trial court "specifically reserves jurisdiction over the order for and actual payment of the attorney's fees, court costs and expenses due to counsel of record, and for any claim of contribution." The agreement recites that the court finds that the attorneys' hourly rates were reasonable and customary, that the case had been consistently litigated for about three years, and that the attorney fees were reasonably and necessarily incurred.

The agreement's schedule of assets shows that the marital house had a fair market value of $223,000 and equity of $193,977. The agreement awards petitioner the house, with credit to respondent for 35% of its equity value ($126,085 of equity value to petitioner and $67,892 to respondent). The agreement also awards petitioner a 1999 Chevy Astro van (not valued) that had been in both parties' names; three individual retirement accounts (IRAs) in her name (total value of $48,592); a "Continental Can Defined Benefit Plan" in her name (not valued); and 65% of the value of two of respondent's retirement accounts totaling $212,034 (thus petitioner received $137,822 of the value). Petitioner also received the cash surrender value of a life insurance policy (not valued), after a $5,000 credit to respondent against her claim for attorney fees. Last, petitioner was to receive an interest in respondent's railroad retirement plan "per statute."

Respondent received, in addition to the 35% share of the equity value in the house mentioned above (worth $67,892), the following items in his name: a 1995 camper (not valued); a 2003 motorcycle trailer (not valued); a 1996 Chevy Lumina (not valued); and a "Continental Can Defined Benefit Plan." He also received 35% of the value of the two previously mentioned retirement accounts in his name (thus about $74,212); a $26,016 401(k) savings plan; and two IRAs in his name, worth $44,522.

The schedule states in a "Recap" that the "total estate divisible 65% to [petitioner] and 35% to [respondent] is $525,935."[1] It also indicates that petitioner received 65% of this value, "341,585," and respondent received 35% of this value, "184,077." We note that, while 35% of $525,935 is $184,077.25, the remaining 65% of $525,935 is $341,857.75, or about $341, 858. The notation of $341,585 therefore appears to be a scrivener's error that switches some numbers. More troublesome,

---

[1] Our calculation is almost identical, at $525,936.

however, is that our calculation of the value of the assets actually assigned to each party in the schedule adds up to $313,015.85 for petitioner and $212,920.15 for respondent, which would mean that the estate was divided roughly 59.5% to petitioner and 40.5% to respondent, rather than a 65% to 35% split. However, given that the asset schedule is somewhat ambiguous and, more significantly, that both parties agree that petitioner received $341,585 of the assets, representing 65% of the estate, we will apply these numbers on appeal. In other words, if there is indeed a mathematical error, petitioner has waived the issue by failing to raise it in the trial court or even on appeal. See In re Marriage of Gibson-Terry, 325 Ill. App. 3d 317, 324-25 (2001) (where husband failed to object to variance in dissolution judgment regarding value of wife's pension plan, issue was waived on appeal); see also 210 Ill. 2d R. 341(h)(7) (points not argued are waived).[2]

Moving on to the schedule of liabilities, petitioner was assigned the $29,000 mortgage on the marital home. She was also assigned credit card debt in her name totaling $42,256, a medical debt of $378, and a roofing bill of $4,200. Petitioner was further assigned a debt of $14,642 to MBNA Visa, with the notation "(for attorney fees)."[3] The schedule includes an attorney fee summary for

_____

[2]This is not to say that there are no potential avenues of relief available to petitioner if the parties made a significant mathematical error in the settlement agreement. See In re Marriage of Johnson, 237 Ill. App. 3d 381, 394-95 (1992) (appellate court affirmed trial court's grant of wife's petition pursuant to section 2--1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2--1401) to modify marital settlement agreement based on mutual mistake of fact).

[3]We note that petitioner's February 1, 2006, financial statement describes the MBNA Visa debt as "LawyerFees/Gas/Household/Xmas." It therefore appears that the MBNA Visa debt is not entirely for attorney fees.

petitioner, consisting of $3,500 for a "Lindy Post [sic]" loan, $10,000 for a Capital One MasterCard cash advance, and $15,000 for an MBNA MasterCard cash advance.[4] The schedule also lists, in petitioner's name, another $3,500 debt to Lindy Pond and a $7,000 debt to Margaret "Posh,"[5] both of which contain the notation "(for attorney fees)."[6] The schedule lists these debts in petitioner's name but does not clearly assign them to either party. Based on the parties' arguments, however, it appears that these debts were assigned to petitioner.

Respondent was assigned $38,263 of credit card debt in his name, a $1,340 debt to a dentist, and liabilities in both parties' names totaling $391. His attorney fee summary shows that he had already paid $10,300 to his present attorney, with the money coming from IRA withdrawals, a motorcycle sale, and an income tax refund. Respondent was also assigned unspecified fees to his first trial counsel.

---

[4]Given that the attorney fee summary does not list the MBNA Visa debt, and in light of the description of the debt on petitioner's comprehensive financial statement, we will assume that the MBNA Visa debt was not primarily for attorney fees.

[5]This name is spelled "Pash" in petitioner's February 1, 2006, comprehensive financial statement.

[6]It is unclear from the schedule whether there are two $3,500 loans from Lindy Pond for attorney fees, or just one loan listed twice. Petitioner's February 2006 comprehensive financial statement lists just one $3,500 loan from Lindy Pond for attorney fees. The financial statement lists the debt to Margaret "Pash" as "Misc./Pay Property Taxes," so it appears that the loan from Pash was not for attorney fees. This interpretation is consistent with the attorney fee summary in the schedule.

The schedule credits petitioner with $16,129.56 against respondent's equity interest in the home, due to: the child support arrearage plus interest; respondent's share of the children's activity expenses, noncovered medical expenses, oral surgery expenses, and education expenses; an evaluation fee; a gun collection credit; income tax refunds; IRA withdrawals; and a dead tree expense.

The schedule lists the fees due to each party's attorney as "Reserved." It lists the total liabilities as $139,630.[7] Adding in respondent's $1,340 dental debt, which was handwritten into the schedule, the total marital debt is $140,970. Petitioner's portion of this debt is $100,976 (which does not include the $28,500 she borrowed from various sources to pay attorney fees), and respondent's portion of the debt is $39,994.

On the same day that the parties signed the marital settlement agreement, the trial court entertained the parties' petitions for contribution to attorney fees. The trial court denied both petitions, stating:

"The issue of contribution is set forth in the attorney's petitions and essentially request the court to, after looking at the division of property and the relative financial circumstances of the property [sic] after the division of this property is made and any other factors, there being no maintenance, that would be the other major consideration, looking at their incomes and ability to pay, the Court is going to deny any relief by [petitioner] in this case.

The Court finds that, as I say, at the end of the day, the economic circumstances available to [respondent] would not, in this Court's judgment, constitute *** an equitable

---

[7]This amount does not include the loans listed in petitioner's attorney fee summary.

basis for him to make a contribution towards any attorney's fees that will be paid. So [petitioner's] request for contribution to attorney's fees is denied.

[Respondent] likewise has a contribution claim, that likewise will be denied for similar reasons. The Court notes that the Court has, and it's reflected in the judgment, it has imputed a $25,000 a year income to [petitioner] in this case. That along with the other distribution of property issues and *** additional financial obligations to her attorney *** prompts this court to believe that her economic circumstances would not warrant a contribution to [respondent]. So each party will bear their own attorney's fees in this case."

The trial court entered an order requiring respondent to pay his attorney fees of $33,549. Respondent was to tender his "house sale proceeds check" to his attorney, who would deduct his fees and pay the balance to respondent. The trial court entered another order stating that petitioner had incurred reasonable and necessary attorney fees, costs, and expenses of $63,163.98 and that she was required to pay those fees.

On appeal, petitioner argues that the trial court erred by not ordering respondent to contribute to her attorney fees. Attorney fees are generally the obligation of the party that incurred them. In re Marriage of Samardzija, 365 Ill. App. 3d 702, 709 (2006). However, section 508(a) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/508(a) (West 2006)) allows the trial court to require one party to pay "a reasonable amount" for the other party's attorney fees in a dissolution proceeding if the party seeking the fees shows that he or she is unable to pay and that the other party is able to pay. In re Marriage of Schneider, 214 Ill. 2d 152, 174 (2005). Inability to pay does not require a showing of destitution, and the party seeking fees is not required to divest himself of capital assets before requesting fees. In re Marriage of Minear, 287 Ill. App. 3d 1073,

1085 (1997). Rather, a party is unable to pay her fees if the payment would strip her of her means of support or undermine her financial stability. Schneider, 214 Ill. 2d at 174. In determining whether and in what amount to award attorney fees, the court should consider the allocation of assets and liabilities, maintenance, and the relative earning abilities of the parties. In re Marriage of Suriano, 324 Ill. App. 3d 839, 852 (2001). Regarding earnings, the court may consider both current and prospective income. In re Marriage of Selinger, 351 Ill. App. 3d 611, 622 (2004).

A trial court's decision to award or deny attorney fees will not be disturbed absent an abuse of discretion. Schneider, 214 Ill. 2d at 174. A trial court abuses its discretion when it acts arbitrarily, acts without conscientious judgment, or, in view of all of the circumstances, exceeds the bounds of reason and ignores recognized principles of law, resulting in substantial injustice. In re Marriage of Marsh, 343 Ill. App. 3d 1235, 1240 (2003).

We first address petitioner's argument that the trial court did not give proper consideration to the fact that she incurred most of her attorney fees as a result of respondent's actions, including, among other things, his failure to produce discovery; his failure to produce court-ordered accountings; his failure to pay child support, mortgage payments, and other court-ordered items; and his failure to respond to various pleadings. Petitioner also argues that respondent created even more attorney fee expenses by filing a multitude of motions that were ultimately of no benefit to him and that never should have been filed.

Respondent points out that petitioner fails to mention that he agreed to pay $5,000 of her attorney fees in the settlement agreement. Respondent contends that, during settlement negotiations in December 2004, the trial court recommended that he pay this amount for his original failure to comply with discovery. Petitioner responds that the record does not show that a settlement was

reached in December 2004, and she points out that in closing argument she specifically objected to this assertion.

Obviously, a settlement was not reached in December 2004, or the case would not have continued for almost two more years. However, petitioner did acknowledge in her statement of claim that "[p]reviously, in December 2004 when the case was thought to be settled, Judge Bongiorno recommended [that respondent] contribute $5,000 to [petitioner's] attorney's fees, court costs and expenses." In any event, petitioner agrees on appeal that the $5,000 contribution was to compensate her for "Respondent's failure and refusal to comply with discovery as of December 2004." She emphasizes that the entirety of her request for attorney fee contribution was preserved.

Respondent argues that he has already paid for fees resulting from his discovery violations, and he points out that petitioner did not exclude those fees when she presented her contribution argument to the court.

We note that several of petitioner's petitions for attorney fees requested the fees under section 508(b) of the Dissolution Act (750 ILCS 5/508(b) (West 2006)). That section allows for attorney fees if a party in a dissolution action unreasonably fails to comply with an order. 750 ILCS 5/508(b) (West 2006). If the trial court finds that the party's failure to comply with an order was without compelling cause or justification, it must award attorney fees to the other party. 750 ILCS 5/508(b) (West 2006); In re Marriage of Michaelson, 359 Ill. App. 3d 706, 715 (2005). Here, the parties agree that the hearing that ultimately took place on attorney fees was under section 508(a) of the Dissolution Act (750 ILCS 5/508(a) (West 2006)). Accordingly, petitioner waived any claim that the trial court was required to enter any findings under section 508(b) of the Dissolution Act. See Commerce Trust Co. v. Air 1st Aviation Cos., 366 Ill. App. 3d 135, 142 (2006) (where party fails

to obtain a ruling on a motion, it is presumed to be abandoned); Cabrera v. First National Bank of Wheaton, 324 Ill. App. 3d 85, 103 (2001) (failure to request hearing on motion results in waiver).

Petitioner argues that, while a section 508(b) award is required if the trial court finds that the lack of compliance was without compelling cause, under section 508(a) the trial court may still consider why attorney fees were incurred in the first place. See In re Marriage of Ziemer, 189 Ill. App. 3d 966, 969 (1989) (court may consider whether one party's conduct precipitated the litigation). However, we conclude that the trial court did not abuse its discretion by not awarding petitioner fees due to respondent's alleged misconduct. Petitioner admits that respondent's $5,000 attorney fee contribution compensated her for respondent's discovery abuses through December 2004, and our review of the record leads us to believe that the bulk of respondent's arguably sanctionable conduct occurred before that time.

We now address petitioner's primary argument, that the division of assets and liabilities, her waiver of maintenance, respondent's lack of child support obligations, and a gross disparity in incomes justify an attorney fee contribution from respondent. Petitioner notes that the trial court imputed a $25,000-per-year income to her associated with her new career in real estate, and she argues that her attorney fee obligations far exceed several years of her anticipated earnings. Petitioner argues that respondent's 2005 income of $93,610 was almost four times her imputed income and that respondent also has a greater ability to earn future income. Petitioner argues that respondent's living expenses are minimized by living with his girlfriend, and she notes that he has no child support or maintenance obligations.

Petitioner further argues that the trial court should not have denied contribution just because respondent has some debt of his own or because she was awarded a marginally greater portion of the

estate. Petitioner argues that, because the marital residence is an illiquid asset, requiring her to pay all of her attorney fees without contribution from respondent would necessarily require her to either take on new debt or invade capital assets, which would strip her of her means of support and undermine her economic stability. Petitioner maintains that she had to borrow $62,000 to pay respondent his interest in the marital residence so she could retain it.[8] Petitioner asserts that she already borrowed $28,500 to pay her attorney, and she argues that respondent should be ordered to pay the balance due of $63,163.98 or at least contribute some amount beyond the $5,000 he already agreed to pay. Petitioner argues that respondent could be ordered to pay his contribution in installments over time.

Respondent argues that the bulk of petitioner's fees were incurred by going over her statement of claim, where she sought over $59,165.45 in credits against him (excluding attorney fees), which would essentially negate his share of equity in the house. He argues that she instead received $16,129 in credits, and now she wants respondent to pay for the fees incurred in litigating for the greater amounts. Respondent points out that he received $51,762 from the proceeds of the house and paid his attorney $33,549, leaving him with $18,113. Respondent further notes that he has over $38,000 in credit card debt, and he argues that he is therefore left with no money after paying the credit card debt. Respondent argues that, while petitioner has similar debt (excluding attorney fees), she also has the house. He also argues that she has waived the argument that he can make installment payments, because she did not offer such a proposal in the trial court.

_____

[8]We note that the schedule of liabilities actually shows that petitioner was to pay respondent $51,762.42 for his interest in the house, after accounting for credits due to petitioner.

On the subject of income, respondent points out that petitioner was earning $38,422 in 2005 when she quit her job, and he argues that the trial court was imputing an income to her of $25,000 for college contribution purposes only. Respondent maintains that we should not ignore that petitioner quit her job in the middle of the proceedings and then asked for contribution based on a lower imputed income for college purposes. Respondent further argues that petitioner received 65% of the assets to balance his higher income. According to respondent, petitioner already benefitted from the differences in income but now seeks to double dip.

We first address respondent's arguments regarding the cause of the litigation and waiver. Although each party asserts that the other party is primarily responsible for the litigation and the resulting attorney fees, the trial court did not make any findings on this issue, and, aside from the previously discussed discovery violations, the record does not clearly indicate that one party is more at fault than the other. Moreover, the settlement agreement states that the trial court found that the attorney fees were reasonably and necessarily incurred, and the trial court order requiring petitioner to pay her attorney fees similarly states that the fees were reasonable and necessary. Accordingly, we decline to single out either party as the primary cause of the protracted litigation and corresponding attorney fees.

On the subject of waiver, we agree with the general principle that the failure to raise an issue in the trial court results in waiver of the issue on appeal. See In re Marriage of Wolff, 355 Ill. App. 3d 403, 414 (2005). However, in this case petitioner clearly preserved the central issue of attorney fee contributions, and she was not required to specifically suggest to the trial court that respondent make installment payments in order to point out on appeal that he could be ordered to do so.

Turning now to the issue of the parties' incomes, we agree with petitioner that the trial court imputed a $25,000 annual income to her and that it was not limited to college contribution purposes. Notably, the settlement agreement states that petitioner was accepting the trial court's imputation of a $25,000 income to her, and nowhere does it state that it is for college contribution purposes only. Moreover, the trial court directly stated in its ruling on attorney fees that it had "imputed a $25,000 a year income to [petitioner] in this case." However, we further note that the settlement agreement states that although petitioner had "not yet generated any meaningful income from such new employment she is confident that soon she will do so." The agreement further recites that petitioner was earning $38,422.80 per year when she quit her job in 2005, and we agree with respondent that this was a circumstance that the trial court could consider. Thus, although petitioner had an imputed income of $25,000, the trial court could consider that her future income was likely to increase. See Selinger, 351 Ill. App. 3d at 622 (court may consider both current and prospective income). As for respondent's income, the settlement agreement recites that he earned $93,610 in 2005 and $65,100 as of October 13, 2006, which would equal about $83,081 for the year.[9]

On the issue of assets and liabilities, the parties agree that petitioner received $341,585 in assets and respondent received $184,077 in assets. Petitioner was assigned $100,976 in liabilities, leaving her with a net of $240,609. After attorney fees, including both the $28,500 paid by loans and the $63,163.98 in unpaid fees, petitioner would net $148,945. Respondent was assigned $39,994 in liabilities, leaving him with a net of $144,083. After paying his attorney fees of $33,549, respondent would net $110,534.

_____

[9]January 1, 2006, to October 13, 2006, is 286 days. $65,100 divided by 286 equals $227.62 per day. $227.62 multiplied by 365 equals $83,081.30.

Petitioner discusses the facts of over 15 cases in support of her argument that the trial court abused its discretion by failing to award her attorney fees. In the majority of these cases, the appellate court affirmed the trial court's award of attorney fees. While the general principles discussed in all of the cases are relevant, the issue here is not whether the trial court could have acted within its discretion by awarding attorney fees but, rather, whether it abused its discretion by not awarding such fees. Thus, we will focus our attention on the three cases cited by petitioner in which the reviewing court reversed the trial court's denial of attorney fees: In re Marriage of Carpenter, 286 Ill. App. 3d 969 (1997), In re Marriage of Haas, 215 Ill. App. 3d 959 (1991), and Sullivan v. Sullivan, 68 Ill. App. 3d 242 (1979).

In Carpenter, the wife sought $3,534 in attorney fee expenses for postdissolution proceedings. The wife's annual income was $12,000, while the husband's income was in the $40,000 to $50,000 range. The appellate court concluded that, given the gross disparity in income, the trial court abused its discretion in failing to find that the wife was unable to pay her attorney fees and in failing to make an award. Carpenter, 286 Ill. App. 3d at 976. In Haas, the wife had an annual income of less than $15,000 and the husband had an income of $49,000, excluding bonuses. Haas, 215 Ill. App. 3d at 961. The appellate court concluded that the trial court abused its discretion by not ordering the husband to pay the wife's attorney fees of $5,647.82, because the wife could not pay the fees without depleting part of the marital assets awarded to her, while the husband could pay both his and his wife's fees from his income, without depleting assets. Haas, 215 Ill. App. 3d at 965. In Sullivan, the wife had an income of only $348 per month and no significant assets, whereas the husband had a take-home pay of $1,223 per month. The appellate court reversed the trial court's denial of attorney

fees, reasoning that the husband's monthly expenses did not diminish his ability to pay the wife's attorney fees. Sullivan, 68 Ill. App. 3d at 248.

Returning to the facts of this case, petitioner clearly demonstrated that she is unable to pay her attorney fees without invading her capital assets or undermining her financial stability. Although petitioner received a greater portion of the marital assets, they consist largely of retirement accounts and illiquid assets such as the house. Petitioner also received around two-thirds of the liabilities, giving her over $100,000 in debts. These debts are in addition to petitioner's attorney fee debts of over $91,000[10] and the approximately $52,000 debt she incurred to pay respondent his share of the home's equity. These circumstances, along with petitioner's limited income, show that petitioner is unable to pay her attorney fees.

We also conclude that petitioner showed that respondent is able to pay at least a portion of her attorney fees. While respondent may still have about $20,000 in credit card debt if he applies his remaining equity from the house to the outstanding credit card balance, this is his only remaining debt, and he has no child support or maintenance obligations. Cf. In re Marriage of McCoy, 272 Ill. App. 3d 125, 128-32 (1995) (trial court did not abuse its discretion in ordering husband to pay half ($5,000) of wife's attorney fees, even though husband had over $25,000 in debt and had no assets other than $200 in savings and $7,000 equity in the marital home and was also paying child support; husband had maintained previous standard of living and had fully litigated the case, and trial court could consider parties' prospective incomes and order payments through installments). Respondent's income of over $83,000 is over three times petitioner's imputed income and more than twice her previous income at Dick Pond Shoes. The courts in Carpenter, Haas, and Sullivan all emphasized

---

[10]This figure includes the $28,500 in loans petitioner took out to pay attorney fees.

the differences in the parties' incomes in determining that the trial courts abused their discretion in refusing to order attorney fee contributions. Though respondent argues that petitioner has already benefitted from the differences in income by receiving 65% of the marital assets, as stated, in determining whether and in what amount to award attorney fees, the court should take into account the allocation of assets and liabilities, maintenance, and the parties' relative earning abilities. Thus, in analyzing this issue, we are cognizant of petitioner's greater assets. But we also consider that this benefit was diluted by her waiver of maintenance and her assumption of a much greater share of the liabilities. We agree with respondent that he should not be responsible for the entire remaining balance of petitioner's attorney fees. At the same time, considering the nature of petitioner's assets, her vast debts, and the significant income disparities, we believe that the trial court abused its discretion by not ordering respondent to contribute to petitioner's attorney fees in any amount beyond the $5,000 he already paid.

Accordingly, we reverse the judgment of the Du Page County circuit court and remand the cause for a hearing to determine an appropriate contribution amount.

Reversed and remanded.

GILLERAN JOHNSON and ZENOFF, JJ., concur.