*In re* MARRIAGE OF PATRICIA G. HARRISON, n/k/a Patricia G. Tassone, Petitioner-Appellant, and JAMES D. HARRISON, JR., Respondent-Appellee.

First District (3rd Division)   No. 1—07—2283

Opinion filed January 28, 2009.

Davis, Friedman, Zavett, Kane, MacRae, Marcus & Rubens, of Chicago (James L. Rubens, of counsel), for appellant.

Brigitte Schmidt Bell, PC, of Evanston (Brigitte Schmidt Bell and Rita Ghose, of counsel), and Law Office of Marcia Lipkin, of Chicago (Marcia Lipkin, of counsel), for appellee.

JUSTICE QUINN delivered the opinion of the court:

Respondent, James D. Harrison, Jr. (James), filed a petition to transfer custody of the parties' youngest daughter, Jenna Harrison, from petitioner, Patricia G. Tassone (Patty), to himself. After a hearing, in which the circuit court noted that James had taken actions to alienate Jenna from Patty, the circuit court denied James's petition to transfer custody. The circuit court subsequently entered an order denying Patty's petition for attorney fees and costs. On appeal, Patty contends that the circuit court abused its discretion by denying her petition for attorney fees and costs.

The parties have three children: Jimmy, born on March 5, 1987; Brittany, born March 13, 1989; and Jennifer (Jenna), born March 14, 1992. The parties were married on July 6, 1985, and separated in August 1992. At the time of their separation and throughout their marriage, the parties resided in Phoenix, Arizona. As part of the dissolution of marriage proceedings, an order was entered in Arizona, on March 25, 1995, granting the parties joint custody of their three children. The order also stated that if Patty were to move to Chicago, Illinois, on or after June 1, 1996, then she would have sole custody of the children. The Arizona court also found that Patty was permitted to relocate to Chicago to further her career and that the emotional,

physical and developmental needs of the children would be adequately taken care of with the relocation. A judgment of dissolution of marriage was entered in November 1995.

In June 1996, Patty moved the children to Chicago and custody was modified so that Patty had sole custody. In July 1999, James filed a petition to modify custody of Jimmy, requesting that James be granted sole custody and that Jimmy be allowed to move to Arizona to live with James. The circuit court granted James's petition and found that it was in Jimmy's best interests for James to have sole custody. Jimmy moved to Arizona to live with James.

In May 2002, James filed a petition to modify custody of Brittany, requesting that James be granted sole custody and Brittany be allowed to move to Arizona to live with James. In May 2003, the parties agreed to the custody modification and James was granted sole custody of Brittany, who then moved to Arizona to live with James.

On March 9, 2005, James filed a petition to transfer custody, requesting sole custody of Jenna and that Jenna be allowed to move to Arizona to live with James. Based on James's motion for a custody evaluation, the circuit court appointed Dr. Sara Bronkowski to conduct a custody evaluation pursuant to section 604(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/604(b) (West 2004)). On May 8, 2006, Dr. Bronkowski submitted her custody evaluation report, in which she recommended that Jenna be permitted to reside with James during high school and that James be named the residential parent. Dr. Bronkowski's rationale was based on Jenna's perception that she and Patty had a terrible relationship. Jenna's feelings were partly based on the fact that Patty did not support Jenna moving to Arizona, despite the fact that her brother and sister were allowed to attend high school in Arizona. Dr. Bronkowski also noted that Jimmy and Brittany were doing well living in Arizona with James.

On May 19, 2006, Patty filed a motion for a custody evaluation report, in which she requested that Dr. Mary Gardner be appointed pursuant to section 604.5 of the Act (750 ILCS 5/604.5 (West 2004)) to assess Jenna's best interests. The circuit court granted Patty's request on the same date. On July 21, 2006, Dr. Gardner submitted her custody evaluation report, recommending that Patty continue to have residential custody of Jenna with liberal visitation with her father, stepmother and siblings. Dr. Gardner noted that Jenna reported a very negative relationship with Patty, which began when James filed the petition for Jenna's removal to Arizona. Dr. Gardner stated that sources reported that Jenna and Patty had a very positive relationship prior to the court action and that the negative relationship between Jenna and Patty had many dynamics associated with alienation cases.

In August 2006, the circuit court conducted a hearing on the contested modification action pertaining to Jenna. The court heard testimony from the parties and both Dr. Bronkowski and Dr. Gardner. Following the hearing, the court denied James's petition for transfer of custody of Jenna. The court found that James had not sustained his burden of proving by clear and convincing evidence that a material change in circumstances had occurred with regard to Jenna. The court also found that it would not be in Jenna's bests interests to live with James in Arizona. The court noted that it believed Dr. Gardner's opinion that James exhibited alienating behaviors, in which he had rejected Patty and Jenna aligned with James in rejecting Patty.

On September 26, 2006, Patty filed a petition for attorney fees and costs pursuant to section 508(b) of the Act (750 ILCS 5/508(b) (West 2006)). Patty later amended her petition to request attorney fees and costs under section 610(c) of the Act (750 ILCS 5/610(c) (West 2006)). On July 11, 2007, the circuit court denied Patty's petition for attorney fees and costs. In doing so, the court stated that it considered the arguments of the attorneys, the case law, and the history of the case. The court noted that the parties began a custody fight in Arizona over 10 years ago in which Patty prevailed and subsequently moved to Illinois pursuant to a proper petition. The court stated that the parties continued to dispute custody and, in 1999, James brought a petition and was successful in obtaining sole custody of Jimmy. Then in 2002, James filed a petition for the sole custody of Brittany, and in 2003, by agreement of the parties, Brittany moved to Arizona to live with James. The court stated that during the hearing with respect to transferring custody of Jenna, the dynamics of the family were "complicated" and the theories regarding the alienation of Jenna were not "clear cut." The court noted that there was "no doubt during all these proceedings that [James] has a very angry and negative view of *** [Patty], does not speak of her in laudatory terms to the children, parents completely different than Patty does, and that is very explicit." The court explained that "because of all this, the children started identifying with [James], but I believe these are subconscious traits. I can't say whether it is all premeditated and this conflict going on for so many years, the other children particularly *** started agreeing with [James] as to some of their mother's negative traits ***." The court also noted that it did not agree with James's lax parenting style, in which he buys his children whatever they want.

The court then explained, "Although this court found the decision easy at the end of the proofs, I think its very hard for this court to say well, it's vexatious litigation when the court appointed an expert who this court ended up disagreeing with, but this expert's opinion said

that Jenna should be allowed to move to Arizona and that the parents have joint custody." The court further stated:

"If a litigant continues litigation when the court's expert comes out in their favor, how in the world [can] the court thin[k] that is vexatious. In the end I think what this comes down to is [James] filed a petition, which he filed a similar petition regarding his two other children, one which was granted, one went by agreement, and then when he files the third petition, the court's expert *** agreed to it. Then how do I find it's vexatious and harassing to a point that there should be fees awarded? I think if you look at people there is a subjective purpose of dislike of the other parent and saying things to annoy them.

I don't think that [James] seeks to annoy or irritate Patty ***. I think it's very clear he really diminished her totally. He does not care what she thinks. He wants what he wants and he wanted his children, and he had, at least I think from an objective basis, reason to believe that this court might grant that given that in the first trial the court granted it. The second one was agreed to, and the court has no doubt that Jenna said she wanted to live with [James]. Is it because [James] told [Jenna] yes, life is grand here in Arizona? Yes. Should [James] have told her that? No. Is the court disturbed and spent hours on the record in the past stating exactly how disturbed the court is by the dynamics in the case, and that the dynamics have shifted where originally the court found that it seemed that Patty was being the more conflictual parent and in recent years [James] has been the conflictual parent? Yes.

* * *

So for those reasons, *** I do think that there must be a more objective basis to make these findings. I don't think we can go on subjective intent. I think we must look at what happened, and based on the objective, looking at what happened from a neutral perspective, I do not believe it would be considered vexatious and harassing and require fees, and the court's discretion, the court is not going to award fees in this regard ***."

Patty now appeals from the denial of her petition for attorney fees and costs. Patty argues that she was entitled to attorney fees and costs pursuant to section 508(b) and section 610(c) of the Act.

Section 508(b) of the Act allows for attorney fees if a party in a dissolution action unreasonably fails to comply with an order. 750 ILCS 5/508(b) (West 2006); *In re Marriage of Pond*, 379 Ill. App. 3d 982, 988 (2008). If the trial court finds that the party's failure to comply with an order was without compelling cause or justification, it must award attorney fees to the other party. 750 ILCS 5/508(b) (West 2006); *Marriage of Pond*, 379 Ill. App. 3d at 988. Section 508(b) also

provides, "If at any time a court finds that a hearing under this Section was precipitated or conducted for any improper purpose, the court shall allocate fees and costs of all parties for the hearing to the party or counsel found to have acted improperly. Improper purposes include, but are not limited to, harassment, unnecessary delay, or other acts needlessly increasing the cost of litigation." 750 ILCS 5/508(b) (West 2006). Section 610(c) of the Act provides for an award of attorney fees and costs "against a party seeking modification if the court finds that the modification action is vexatious and constitutes harassment." 750 ILCS 5/610(c) (West 2006).

Here, the circuit court's order denied Patty's petition for attorney fees and costs pursuant to both section 508(b) and 610(c) of the Act. The circuit court's comments showed that it found James's action in filing the petition to transfer custody of Jenna was not vexatious and did not constitute harassment. The circuit court's decision to award or deny attorney fees will not be disturbed absent an abuse of discretion. *Marriage of Pond*, 379 Ill. App. 3d at 987. We find no abuse of discretion in this case.

The record shows that the circuit court carefully considered Patty's petition for attorney fees and costs and determined that this case did not warrant such an award. The court noted that while it disagreed with James's parenting and ultimately denied James's petition for the transfer of custody of Jenna, it could not find that James was vexatious or filed the petition for the purpose of harassing Patty. Rather, the court noted that throughout the parties' litigation, James filed two prior custody modification petitions with respect to the parties' two other children and James was successful in obtaining custody of the two other children. In addition, the court's appointed expert, Dr. Bronkowski agreed with James's request that Jenna be permitted to reside with James during high school and that James be named the residential parent. Therefore, the court concluded that it could not find James's behavior to warrant an award of attorney fees and costs. We cannot say that the circuit court's decision was an abuse of discretion.

Patty, nonetheless, argues that the circuit court incorrectly believed that it had to determine that James's actions were "premeditated" or that the court had to find James had a "motive" in order to award attorney fees and costs under sections 508(b) and 610(c) of the Act. While the court briefly questioned whether James's involvement in alienating the parties' children from Patty was premeditated, the record shows that the court then properly analyzed whether James's action in filing the petition to transfer custody of Jenna could be considered vexatious or harassment for the purpose of granting at-

torney fees and costs. The circuit court noted that it could not base such an award on Patty's subjective belief that James filed the petition for an improper purpose, but rather such an award must be based on a neutral, objective standard. The court concluded that it could not find an objective basis to conclude that James's petition was vexatious or constituted harassment. We find no abuse of discretion on this basis.

Patty also argues that the circuit court's finding with respect to her request for attorney fees and costs conflicted with the court's previous contempt findings against James regarding visitation with the parties' children. However, sections 508(b) and 610(c) state that attorney fees and costs shall be assessed if the court finds that "a hearing under *this Section* was precipitated or conducted for any improper purpose" (emphasis added) (750 ILCS 5/508(b) (West 2006)) or "that the modification action is vexatious and constitutes harassment" (750 ILCS 5/610(c) (West 2006)). Nothing in these sections required the circuit court to consider James's prior involvement with the court regarding visitation with the parties' children in determining whether James filed the petition for transfer of custody of Jenna for an improper reason. Furthermore, the record shows that the circuit court did in fact consider the context of this case, including the lengthy litigation between the parties, in denying Patty's petition for attorney fees and costs.

Patty further argues that this court's decision in *In re Marriage of Lewis*, 188 Ill. App. 3d 142 (1989), supported the imposition of attorney fees and costs in this case. In *Marriage of Lewis*, this court held that the circuit court's award of attorney fees to the father was not an abuse of discretion where the circuit court found that the mother's repeated attempts at modification and her continual interference with the husband's visitation rights were vexatious and constituted harassment. *Marriage of Lewis*, 188 Ill. App. 3d at 145-46. Contrary to Patty's argument, the circuit court followed the reasoning in *Marriage of Lewis* by admonishing James that while his behavior to date was not vexatious, the court could find it to be so if James filed repeated attempts at modification with respect to Jenna. The court specifically stated:

> "When I look at the case law and I look at the facts at this time, the motion would be denied but I will state for the record that having had these proceedings, should [James] think in two years he will *** should come back and ask for custody of Jenna, I would be hard pressed. There would have to be an extraordinary change in circumstances for me to believe that it was done for anything other than vexatious or harassing reasons at that time."

The circuit court therefore cautioned James against repeated attempts at modification which were found to be vexatious and to constitute harassment in *Marriage of Lewis*, 188 Ill. App. 3d at 145.

For the above reasons, we affirm the judgment of the circuit court.

Affirmed.

THEIS and COLEMAN, JJ., concur.[1]

_____

[1]After granting a motion to publish and due to the fact that Justice Alan Greiman is no longer with this court, Justice Sharon Johnson Coleman has agreed to be the third panel member.