2025 IL App (1st) 240601

Nos. 1-24-0601 & 24-1131 (cons.)

Opinion filed August 5, 2025

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF CAROLINE HIPES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| and | ) | No. 20 D 5727 |
| | ) | |
| DIEGO LOZANO, | ) | Honorable |
| | ) | Marita C. Sullivan |
| Respondent-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE VAN TINE delivered the judgment of the court, with opinion.
Justices McBride and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1     This is the second appeal in this dissolution of marriage case. In the first appeal, we affirmed restrictions on respondent Diego Lozano's parenting time with his and petitioner Caroline Hipes's daughter, F.L. *In re Marriage of Hipes*, 2023 IL App (1st) 230953, ¶ 1 (*Hipes I*). In this appeal, Lozano and his mother, attorney Maria Alma Alvarado (collectively, appellants), challenge the trial court's orders (1) disqualifying Alvarado from representing Lozano, (2) holding appellants in contempt for Alvarado filing a second appearance after being disqualified, and (3) ordering appellants to pay the fees of Hipes's attorney and the appointed child representative.

For the following reasons, we affirm Alvarado's disqualification. We do not consider the purged contempt findings, which are moot. We affirm the trial court's imposition of sanctions against Alvarado and Lozano pursuant to section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/508(b) (West 2022)). We also affirm the trial court's attorney fee awards against Lozano pursuant to sections 508(a) and 506(b) of the Act (*id.* §§ 506(b), 508(a)) to the extent those awards will be or already have been paid from existing assets such as Interest on Lawyer Trust Accounts (IOLTA)[1] funds, tax refunds, and retirement account distributions. We reverse the remainder of the fee awards that would require additional payment from Lozano due to his inability to pay.

¶ 2                                I. BACKGROUND

¶ 3     Caroline Hipes and Diego Lozano married in 2010. They had one child during their marriage, F.L., who is now 14 years old. Hipes filed a petition for dissolution of marriage in 2020.

¶ 4                    A. Predecree Hearing, Judgments, and First Appeal

¶ 5     Over several dates in 2022 and early 2023, the trial court held a predecree hearing regarding restrictions on Lozano's parenting time. Attorneys Annette Fernholz and Alejandro Lopez represented Lozano, attorney Jill Peters represented Hipes, and appointed child representative attorney Kathryn Ciesla represented F.L.

---

[1]An IOLTA account is "a pooled interest- or dividend-bearing client trust account, established with an eligible financial institution with the Lawyers Trust Fund of Illinois designated as income beneficiary, for the deposit of client or third-person funds." Ill. R. Pro. Conduct R. 1.15C(c) (eff. July 1, 2023). Attorneys are required to deposit funds belonging to a client or third person into an IOLTA account unless the funds could otherwise earn net income for the person. See generally Ill. R. Pro. Conduct R. 1.15B (eff. July 1, 2023).

¶ 6    Lozano and Hipes testified at the predecree hearing. Their testimony established that Lozano's alcohol abuse led to a conviction for domestic violence against Hipes, multiple convictions for driving under the influence, and the loss of his job. *Hipes I*, 2023 IL App (1st) 230953, ¶¶ 6-26. It also caused F.L. to become anxious, withdrawn, and upset. *Id.* ¶¶ 8-15.

¶ 7    The only other witness who testified at the predecree hearing was Lozano's mother, Maria Alma Alvarado. She testified that Lozano struggled with alcohol abuse beginning in 2015 but stopped drinking in December 2020. According to Alvarado, Lozano "overc[a]me the drinking problem that he once had," and monitoring his alcohol use was unnecessary.

¶ 8    Alvarado also testified that Lozano did not have anger management issues; rather, he "[was] the most mild-mannered individual [she] could ever meet." However, she acknowledged that Lozano choked Hipes and was arrested for domestic violence in May 2018. According to Alvarado, Lozano choked Hipes because she "provoked him and spun him around and verbally abused him." Shortly after Lozano's arrest for domestic violence, Alvarado admonished Hipes that she "needed to rethink what she was doing" and should not let the domestic violence incident "get blown out of proportion." Alvarado attended a hearing in the domestic violence case and "explained to [Lozano's] attorneys why [his release with an ankle monitor] was unnecessary and asked them to impress on the judge these reasons." Lozano's attorneys followed her instructions, and Lozano was released without an ankle monitor.

¶ 9    Alvarado further testified that Lozano lived with her from May to September 2018 and she observed his interactions with F.L. during that time. According to Alvarado, F.L. never appeared sad or distraught when she was with Lozano. Alvarado testified that there was no "reason in the

world why [she] shouldn't see [her] granddaughter" and that Lozano should have unrestricted parenting time.

¶ 10    Alvarado is an attorney who has been licensed since 1991 and operates her own firm in Oak Park. During her testimony, Alvarado revealed that she paid for and reviewed transcripts of Lozano's and Hipes's testimony at prior hearing dates. Alvarado testified that she had "consulted with" Lozano's attorneys throughout the case and "offered suggestions and comments" to them. Alvarado conferred with at least two of Lozano's attorneys, including attorney Lopez, about their "strategy and positions" in this case. Alvarado also paid approximately $25,000 of Lozano's attorney fees and expected him to repay her.

¶ 11    Following the predecree hearing, the trial court entered judgments for dissolution of marriage and allocation of parental responsibilities. The court concluded that concerns regarding Lozano's alcohol abuse were well-founded and that he posed a serious risk to F.L.'s mental and physical health and safety. The court restricted Lozano's parenting time with F.L. and ordered him to participate in sobriety monitoring and alcohol counseling. In addition, the court required Lozano to be present for all visits between his "extended family" and F.L. Attorney Fernholz then withdrew from representing Lozano.

¶ 12    On May 25, 2023, Alvarado, acting as Lozano's attorney, filed a notice of appeal challenging the restrictions on his parenting time, which initiated *Hipes I*. On June 2, 2023, Fernholz filed a petition seeking her attorney fees from Lozano. She attached her retainer agreement with Lozano, in which Alvarado guaranteed to pay Fernholz's attorney fees.

¶ 13                      B. Disqualification Proceedings

¶ 14    Also on June 2, 2023, Alvarado filed an appearance as Lozano's attorney in the trial court. The child representative filed a motion to disqualify Alvarado. The child representative argued that the advocate-witness rule and Rule 3.7 of the Illinois Rules of Professional Conduct of 2010 (Ill. R. Pro. Conduct (2010) R. 3.7 (eff. Jan. 1, 2010)) prohibited Alvarado from representing Lozano because Alvarado was a witness at the predecree hearing and would likely be a witness again in the event of a new hearing on remand or a hearing on a motion to modify the restrictions on Lozano's parenting time. The child representative also contended that Alvarado had personal interests in unrestricted contact with her granddaughter and the attorney fees for which she was the guarantor, which were conflicts of interest under Rule1.7 (Ill. R. Pro. Conduct (2010) R. 1.7 (eff. Jan. 1, 2010)).

¶ 15    In response, Alvarado argued that a "lawyer who is disqualified by reason of his or her likely being called as a necessary witness may continue the representation until commencement of trial," quoting an Illinois State Bar Association advisory opinion. See ISBA Op. No. 11-05 (Mar. 2011), https://www.isba.org/ethics/opinions/1105 [https://perma.cc/5G3K-9HMR]. Alvarado contended that she could represent Lozano without violating Rule 3.7 unless and until a new hearing was ordered. Alvarado also argued that her representation of Lozano did not violate Rule 1.7 because that rule applied only to "matters arising from the representation of two or more parties in the same proceeding" and she represented only one party, Lozano. Alvarado also attested that she had conducted an ethics inquiry with the Attorney Registration and Disciplinary Commission. Finally, Alvarado claimed that neither she nor Lozano could pay for another attorney because she had already "max[ed] out" her credit doing so.

¶ 16    Following a hearing on July 6, 2023, the court disqualified Alvarado pursuant to Rule 3.7 because she had already testified as a witness and was likely to be a necessary witness in the future. The court also disqualified Alvarado pursuant to Rule 1.7(a)(2) "because of the potential for a conflict of interest between Ms. Alvarado's personal interests and Mr. Lozano's interest as her client." The court cited "Ms. Alvarado's use of the first person in her client's responses to the [motion to disqualify]" and her "personal guarantee for Mr. Lozano's expenses." Finally, the court found that Alvarado's disqualification would not cause Lozano hardship because he "had representation by counsel previously through these proceedings."

¶ 17    On July 17, 2023, Hipes filed a motion in *Hipes I* asking this court to adopt the trial court's order disqualifying Alvarado, which we granted. On July 26, 2023, Alvarado filed a petition for leave to appeal her own disqualification. On August 17, 2023, we denied Alvarado leave to appeal because Illinois Supreme Court Rule 306(a)(7) (eff. Oct. 1, 2020) provides that a "party" may petition for leave to appeal "from an order of the circuit court granting a motion to disqualify the attorney for any party." Alvarado was not a party; she was an attorney and a witness. We affirmed the restrictions on Lozano's parenting time on November 29, 2023. *Hipes I*, 2023 IL App (1st) 230953, ¶ 1.

¶ 18                                    C. Contempt Proceedings

¶ 19    On August 28, 2023, Alvarado filed a second appearance on Lozano's behalf in the trial court, which purported to limit the scope of her representation pursuant to Illinois Supreme Court Rule 13(c)(6) (eff. Jan. 1, 2023).

¶ 20    Hipes and the child representative both filed motions for contempt, sanctions, and attorney fees. They argued that Alvarado's second appearance violated the trial court's disqualification

order. The child representative noted that Alvarado filed Lozano's appellate brief in *Hipes I* despite her disqualification, as her name and e-mail address appeared in the notice of filing for that brief.

¶ 21    At a hearing on December 6, 2023, the trial court found Alvarado and Lozano in contempt because Alvarado's second appearance violated the disqualification order. However, the court purged the contempt because Alvarado's attorney at the time, Edward Clinton, agreed to withdraw her second appearance. It appears that Alvarado attempted to fire Clinton when he agreed to withdraw her second appearance, but the trial court denied Clinton's motion to withdraw.

¶ 22                              D. Attorney Fee Proceedings

¶ 23                              1. December 6, 2023, Hearing

¶ 24    Also at the December 6, 2023, hearing, the trial court granted Hipes and the child representative leave to file attorney fee petitions. In anticipation of those petitions, the court heard evidence and argument regarding the parties' ability to pay attorney fees. Lozano did not appear at the December 6, 2023, hearing, so he did not testify.

¶ 25    Hipes testified that her gross annual income was the same as what she reported in a financial affidavit in February 2023: $72,651. She had full custody of F.L. and was responsible for all her expenses but received $512 per month in child support from Lozano. Hipes made student loan payments of $90 per month, and her daily expenses were somewhat higher due to inflation. Hipes testified that she was unable to pay her attorney fees in this case.

¶ 26    Hipes also introduced evidence of Lozano gambling through DraftKings and FanDuel. From August 22, 2022, to October 4, 2022, Lozano spent $1,913.37 on gambling. In February and March 2023, he spent $2,456.87 on gambling. Therefore, Hipes contended that Lozano had more

than $1,000 a month in discretionary income from which he could pay attorney fees. Hipes requested that the court order Lozano to pay all her attorney fees.

¶ 27    Alvarado also testified at the December 6, 2023, hearing. Alvarado testified that she paid approximately $28,000 of Lozano's attorney fees and $5,000 of his court costs, which he owed her. However, Lozano had "not been able to make any payments because his income d[id]n't allow him to." Alvarado admitted that she drafted Lozano's appellate brief in *Hipes I* after being disqualified. When Hipes's attorney asked Alvarado what hourly rate she charged for such work and how she documented her time, Alvarado refused to answer the questions as "irrelevant." When Hipes's attorney asked Alvarado if she prepared the notice of appeal in *Hipes I*, she claimed that was "attorney-client privileged information." Alvarado later admitted that she did prepare the notice of appeal and the record on appeal in *Hipes I*.

¶ 28                                    2. Fee Petitions

¶ 29    Hipes and the child representative then filed fee petitions pursuant to several different sections of the Act, which we set forth here for context. Section 508(b) requires a court to impose attorney fees as sanctions for violating court orders and needlessly increasing litigation. 750 ILCS 5/508(b) (West 2022). Section 508(a) allows a court to order one spouse to pay the other spouse's attorney fees based on the spouses' respective financial resources. *Id.* § 508(a). Section 506(b) allows a court to order one or both parents to pay the child representative's attorney fees. *Id.* § 506(b).

¶ 30    Hipes sought $4,165 against Alvarado and $2,415 against Lozano as section 508(b) sanctions for Alvarado's second appearance and the resulting contempt findings. Hipes allocated a greater portion of the section 508(b) sanctions to Alvarado due to her "specialized training,

superior knowledge, and standing as an attorney." Hipes also sought $12,075 in attorney fees against Lozano pursuant to section 508(a) for appellate work in *Hipes I*.

¶ 31    Pursuant to section 506(b), the child representative sought $28,181.74 for postdecree work in the trial court and $18,330.65 for appellate work in *Hipes I*. She also sought reasonable attorney fees as section 508(b) sanctions for her work enforcing the trial court's disqualification order.

¶ 32    In response, Alvarado argued that (1) the trial court erred in disqualifying her, (2) this court erred in disqualifying her in *Hipes I*, (3) Hipes did not need to oppose Alvarado's attempt to appeal her own disqualification because she should have known that appeal would be dismissed because Alvarado was not a party, (4) Hipes and the child representative failed to seek their fees for appellate work in the appellate court, (5) Alvarado's second appearance was proper and the trial court erred in holding her in contempt, and (6) Hipes and the child representative's billing was duplicative.

¶ 33    Lozano's *pro se* response to the fee petitions stated that he worked at Loyola University Health System. Lozano also filed a financial affidavit attesting that his annual gross income for 2023 was $40,811 and his monthly gross income was $3,146. His monthly payroll deductions, child support payments, and living expenses totaled $2,002, and his monthly debt payments totaled $718. Therefore, his monthly net income was $426. Lozano's assets consisted of $80 in a checking account, $3,317 in an investment account with Waddell & Reed, a life insurance policy valued at $44, and a retirement account with an $816 balance.

¶ 34                                    3. Trial Court's Attorney Fee Rulings

¶ 35    The trial court awarded Hipes $2,415 against Lozano and $4,165 against Alvarado in section 508(b) sanctions. The court also awarded Hipes $12,075 in section 508(a) fees for her

attorney's work in *Hipes I*. The court ordered that Hipes's section 508(a) fees would be paid in part from (1) $1,487.46 in IOLTA funds already held by Hipes's attorney, (2) $2,782.50 in Lozano's unused Soberlink alcohol monitoring funds, also held in Hipes's attorney's IOLTA account, and (3) $1,674.51 from Lozano's 2020 and 2021 tax refunds.

¶ 36 The court awarded the child representative $7,107 in section 508(b) sanctions against Alvarado but denied section 508(b) sanctions against Lozano. The court also awarded the child representative $21,074.74 in trial court fees and $18,330.65 in appellate court fees pursuant to section 506(b), to be paid by Lozano. The court further ordered that the dissolution judgment be modified such that distributions from Hipes's retirement account to Lozano would go to pay the section 506(b) fees. For clarity, we set out the fee awards in the chart below.

| | *Against Lozano* | | *Against Alvarado* | |
| --- | --- | --- | --- | --- |
| Section | To Hipes | To Child Rep. | To Hipes | To Child Rep. |
| 506(b) (Trial court) | - | $21,074.74 | - | - |
| 506(b) (Appellate court) | - | $18,330.65 | - | - |
| 508(a) | $12,075 | - | - | - |
| 508(b) | $2,415 | Denied | $4,165 | $7,107 |
| Subtotals | $14,490 | $39,405.39 | $4,165 | $7,107 |
| TOTALS | $53,895.39 | | $11,272 | |

¶ 37 On March 14, 2024, the child representative filed a motion to modify the attorney fees order pursuant to section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2022)). This motion was based on the marital settlement agreement's provision that Lozano would receive

$16,171.47 from Hipes's retirement account. The motion sought an order making those funds payable to the child representative (by way of F.L. and Hipes) instead of Lozano because, if Lozano received the funds, there was no guarantee he would turn them over to the child representative as ordered. Lozano did not respond to this motion. The trial court granted the motion to modify on May 13, 2024.

¶ 38    Appellants timely appealed.

¶ 39                                    II. ANALYSIS

¶ 40    Appellants challenge Alvarado's disqualification, the contempt findings, and the attorney fee awards.

¶ 41                                  A. Disqualification

¶ 42    Appellants argue that the trial court erred in disqualifying Alvarado because (1) the possibility that she would be a witness in postdecree proceedings did not justify disqualification under Rule 3.7 and (2) her guarantee to pay Lozano's other attorney fees did not create a conflict of interest under Rule 1.7.

¶ 43    Although motions to disqualify attorneys can be misused for purposes of harassment, courts must balance that concern against the need to enforce the rules of legal ethics, which protect the attorney-client relationship and maintain public confidence in the integrity of the legal profession and the administration of justice. *Pederson & Houpt, P.C. v. Summit Real Estate Group, LLC*, 376 Ill. App. 3d 681, 685 (2007). Therefore, "any doubts as to the existence of a conflict should be resolved in favor of disqualification." (Internal quotation marks omitted.) *In re Estate of Wright*, 377 Ill. App. 3d 800, 804 (2007). A conflict need not "fit squarely within the types of conflicts recognized in the [R]ules [of Professional Conduct]" if the principles expressed in the

rule support disqualification. *People v. Muhammad*, 2023 IL App (1st) 220372, ¶ 106. That said, attorney disqualification is a drastic measure because it terminates an attorney-client relationship and prohibits a party from retaining counsel of the party's choice. *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 178 (1997).

¶ 44 We will not disturb a trial court's decision to disqualify an attorney unless the trial court abused its discretion. *Id.* at 176. An abuse of discretion occurs when the trial court's decision is arbitrary, unreasonable, or unsupported by the evidence or where no reasonable person would agree with the trial court's ruling. *Id.* To the extent our review of the trial court's disqualification order requires construction of the rule, that is a question of law we review *de novo*. *In re Estate of M.L.*, 2018 IL App (3d) 170712, ¶ 23; see also *Metzger v. Brotman*, 2021 IL App (1st) 201218, ¶ 34.

¶ 45                                   1. Rule 3.7 and the Advocate-Witness Rule

¶ 46 The trial court's disqualification of Alvarado was based in part on Rule 3.7, which provides that an attorney shall not act as an advocate at a trial in which the attorney "is likely to be a necessary witness." See Ill. R. Pro. Conduct (2010) R. 3.7(a) (eff. Jan. 1, 2010). Rule 3.7 is related to the advocate-witness rule. *People v. Rivera*, 2013 IL 112467, ¶¶ 39-40. The advocate-witness rule "precludes an attorney from acting as an advocate and a fact witness in the same case." (Internal quotation marks omitted.) *Cushing v. Greyhound Lines, Ltd.*, 2013 IL App (1st) 103197, ¶ 317. "The rule reflects the inconsistency between the role of an advocate and that of a witness; the function of an advocate is to advance or argue the cause of another, while that of the witness is to state the facts objectively." *People v. Gully*, 243 Ill. App. 3d 853, 859 (1993). Furthermore, "the attorney-witness may not be a fully objective witness, causing harm to the client's case, or

the trier of fact may grant undue weight to the attorney's testimony, unfairly disadvantaging the opposing party." *Rivera*, 2013 IL 112467, ¶ 40. However, a court may allow an attorney to testify in a case she is trying, if necessary. *Cushing*, 2013 IL App (1st) 103197, ¶ 317. In addition, an attorney who is also a witness need not withdraw if doing so would cause substantial hardship for the client. *Id.* ¶ 318; see also Ill. R. Pro. Conduct (2010) R. 3.7(a) (eff. Jan. 1, 2010).

¶ 47     At the predecree hearing, Alvarado was a fact witness and was also acting as one of Lozano's attorneys. Alvarado's testimony from that hearing spanned 82 pages of the reports of proceedings and addressed her son's alcohol use, anger issues, domestic violence, and parenting of F.L.

¶ 48     Alvarado's testimony also revealed that she was acting as part of Lozano's legal team. She admitted that she consulted with her son's other attorneys on legal strategy and that she paid for and reviewed transcripts of Hipes's and Lozano's testimony. So, when the motion to disqualify was before the trial court, Alvarado had already "act[ed] as an advocate and a fact witness in the same case." See *Cushing*, 2013 IL App (1st) 103197, ¶ 317. Alvarado was not just "likely to be a necessary witness" (see Ill. R. Pro. Conduct (2010) R. 3.7(a) (eff. Jan. 1, 2010)); she already *was* a witness. Disqualifying her on that basis was proper.

¶ 49     After her disqualification, Alvarado continued to entangle her conflicting roles as attorney and witness. She admitted that she ghostwrote Lozano's appellate brief in *Hipes I* despite being disqualified. She was also the only witness to testify on Lozano's behalf at the December 6, 2023, postdecree hearing. During her testimony, she objected to, and asserted the attorney-client privilege over, multiple questions. This conduct shows that the trial court's concern about Alvarado's refusal to follow the rule was warranted.

¶ 50    *People v. Koen*, 2014 IL App (1st) 113082, supports Alvarado's disqualification. In *Koen*, the defendant was charged with theft and forgery arising out of a scheme in which he fraudulently reinstated a defunct charity and claimed ownership of its former property. *Id.* ¶¶ 1-10. The defendant's son, Koen Jr., an attorney, instructed tenants of the property to send rent payments to the defendant even though he did not actually own the property. *Id.* ¶¶ 7-8. When the defendant was charged, Koen Jr. sought to represent him, and the State moved to disqualify based on Koen Jr.'s communications with tenants, which made him a witness. *Id.* ¶ 12. The trial court disqualified Koen Jr., and he did not testify at his father's trial. *Id.* This court affirmed the disqualification of Koen Jr. pursuant to Rule 3.7 and the advocate-witness rule. *Id.* ¶¶ 39-41. We rejected the argument that Koen Jr. was not a necessary witness because the State ultimately decided against calling him at trial. *Id.* ¶ 40. "Koen Jr.'s involvement in the events surrounding this matter was sufficient that he reasonably should have known he would likely be called as a witness by the State; his correspondence with *** the tenants w[as an] important piece[ ] of evidence." *Id.* ¶ 41. If Koen Jr.'s dual role as advocate-witness supported disqualification *before* he could even be called to testify, then Alvarado's disqualification *after* she testified was certainly warranted.

¶ 51    Appellants claim that the trial court disqualified Alvarado based only on speculation about what role she might play at hypothetical future hearings. We disagree. Disqualifying Alvarado required no such speculation. What Alvarado actually did in this case warranted disqualification. At the November 2022 predecree hearing, Alvarado was caught red-handed violating the advocate-witness rule and Rule 3.7. She could not avoid disqualification in July 2023 by claiming that she probably would not violate Rule 3.7 again in the future. Such a claim would have been untrue anyway, as she testified at the December 6, 2023, postdecree hearing. Alvarado repeatedly showed

brazen disregard for the rule and the trial court's orders. The trial court's disqualification of Alvarado was justified, necessary, and not an abuse of discretion.

¶ 52     Appellants also contend that disqualifying Alvarado caused Lozano substantial hardship because "his mother helping him out to deal with the pending fee petitions on a *pro bono* basis was his last option to have any legal representation in this matter." That is false. Lozano retained another private attorney, Clinton, to represent him within three months of Alvarado's disqualification. Clinton withdrew because Lozano refused to communicate with him or attend hearings.

¶ 53     A different private counsel represents Lozano in this appeal. Alvarado was not Lozano's only hope of having an attorney in this case. Accordingly, we affirm the trial court's disqualification of Alvarado pursuant to Rule 3.7 and the advocate-witness rule.

¶ 54                                    2. Rule 1.7(a)(2)

¶ 55     The trial court also disqualified Alvarado pursuant to Rule 1.7(a)(2), which provides that an attorney shall not represent a client if there is a significant risk that the attorney's personal interests will materially limit her representation of the client. See Ill. R. Pro. Conduct (2010) R. 1.7(a)(2) (eff. Jan. 1, 2010). Disqualification pursuant to Rule 1.7(a)(2) requires a significant risk that an attorney's ability to consider, recommend, or carry out an appropriate course of action for the client will be materially limited due to the attorney's own interests. *In re Estate of M.L.*, 2018 IL App (3d) 170712, ¶ 41.

¶ 56     Alvarado had two personal interests in this case. First, these proceedings determined restrictions on Lozano's parenting time, which affected how often and under what circumstances Alvarado could see her granddaughter. Unrestricted parenting time for Lozano would benefit

Alvarado because it would allow her to see F.L. more often and more easily. During a sidebar at the predecree hearing, one of Lozano's attorneys explained that

> "[Alvarado] became an issue when Ms. Hipes wanted her barred from seeing the grandchild, and I think that's what made her testimony necessary ***.

> So that's why the testimony of Ms. Alvarado becomes critical. It's just in her own defense when she's been accused of drinking and being verbally abusive and those kinds of things to the point where she can't see her own grandchild, and that's really the issue, I think, that's before this Court and why I called Ms. Alvarado to testify."

This induced Alvarado, acting as her son's attorney, to act unethically in the pursuit of unrestricted parenting time for her son. The notice of appeal Alvarado drafted, signed, and filed in *Hipes I*—despite being disqualified—stated that "Respondent-Appellant asserts that [the trial court] erred in restricting Appellant's parenting time; [and] restricting visitation *by paternal grandparents*." (Emphasis added.). Alvarado also ghostwrote the appellate brief challenging those restrictions even after this court and the trial court disqualified her. The record is clear that Alvarado's own interests motivated her improper involvement in this case.

¶ 57    Second, Alvarado was the guarantor of fees that Lozano owed his other attorneys. By the time of the predecree hearing, Alvarado had already paid Lozano's attorneys at least $25,000, which she expected Lozano to repay. Lozano was financially dependent on and indebted to Alvarado, which could affect the decision-making of both individuals in an attorney-client relationship. For example, Alvarado may have opposed monitoring of Lozano's alcohol use not because he was sober but because such monitoring was "costly" and she did not want to pay for it. That is what Alvarado claimed in her response to the motion to disqualify. Or Lozano may have

been unable to fire Alvarado as his attorney due to his financial dependence on her, to say nothing of their mother-son dynamic.

¶ 58 The rationale of Rule 1.7 is that an attorney's "own interests should not be permitted to have an adverse effect on representation of a client." Ill. R. Pro. Conduct (2010) R. 1.7 cmt. 10 (eff. Jan. 1, 2010). That is exactly what happened in this case. Alvarado's insistence on representing Lozano even after a court order disqualified her led to a contempt finding and section 508(b) sanctions against Lozano. Lozano is worse off because of Alvarado's involvement in this case.

¶ 59 Appellants argue that neither Hipes nor the child representative had standing to seek Alvarado's disqualification. Appellants did not develop this argument in the trial court. One of Lozano's filings recited that "[s]tanding requires opposing counsel show that Attorney Alvarado's representation of Diego Lozano's challenge to their fee petitions adversely affects their client's interests" but did not actually claim that Hipes and the child representative *lacked* standing. Because appellants did not develop this argument in the trial court, they have forfeited it on appeal. See *Forest Preserve District of Cook County v. Royalty Properties, LLC*, 2018 IL App (1st) 181323, ¶ 38.

¶ 60 Regardless, we reject this standing argument. It is true that "[a] party does not have standing to challenge opposing counsel's ability to represent a client without some showing that the representation adversely affects the interests of the party challenging opposing counsel's representation." *In re Estate of M.L.*, 2018 IL App (3d) 170712, ¶ 27. Alvarado's representation of Lozano prejudiced Hipes and the child representative in two ways. First, it forced Hipes and the child representative to spend time and money addressing frivolous filings such as Alvarado's

second appearance and her attempt to appeal her own disqualification. Second, Alvarado used her claimed position as Lozano's attorney to obstruct the December 6, 2023, hearing. She refused to answer some of Hipes's attorney's questions as irrelevant and subject to the attorney-client privilege. A fact witness hiding behind an attorney-client privilege that she has no right to assert prejudices opposing parties.

¶ 61    Appellants also argue that Lozano's financial dependence on and indebtedness to Alvarado did not create a conflict of interest because "attorneys are even permitted to advance the costs of litigation on behalf of clients," citing *Achs v. Maddox*, 175 Ill. App. 3d 989, 996 (1988). An attorney can advance "the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence." (Internal quotation marks omitted.) *Id.*; see also Ill. R. Pro. Conduct (2010) R. 1.8(e)(1) (eff. Jan. 1, 2010). But in this case, Alvarado was primarily her son's creditor for his attorney fees and then attempted to act as his attorney as well. This was not the common and proper scenario in which an attorney advances the cost of an expert witness or agrees to a contingency fee. See Ill. R. Pro. Conduct (2010) R. 1.8(e)(1), (i)(2) (eff. Jan. 1, 2010).

¶ 62    Finally, appellants contend that Lozano gave informed consent to Alvarado's representation of him. The record does not support this claim. The record does not indicate that anyone asked Lozano whether he consented to his mother's representation of him. Accordingly, we affirm the trial court's disqualification of Alvarado.

¶ 63                                     B. Contempt Findings

¶ 64    Appellants next challenge the trial court's contempt findings against them. However, their brief "acknowledge[s] that the December 6, 2023, order provides that the court's findings of

contempt were immediately purged upon [Alvarado's] withdrawal of the limited scope appearance and that typically renders an appeal from the contempt order moot." That is correct. When a trial court has purged a contempt finding, an appeal of that contempt finding is moot. *In re Marriage of Benjamin*, 2017 IL App (1st) 161862, ¶ 28 (citing *In re Estate of Wellman*, 174 Ill. 2d 335, 353 (1996)). Therefore, appellants' challenge to the contempt findings is moot, and we will not consider it.

¶ 65                                      C. Attorney Fees

¶ 66    Appellants contend that the trial court erred in ordering them to pay Hipes and the child representative's attorney fees because (1) section 508(b) sanctions against Alvarado were improper because she was not a party, (2) Lozano cannot afford to pay section 508(a) or 506(b) attorney fees, (3) Hipes and the child representative's fees were duplicative, and (4) the trial court improperly modified the dissolution judgment to pay the child representative's fees.

¶ 67                              1. Section 508(b) Sanctions

¶ 68    Appellants contend that the trial court could not impose section 508(b) sanctions against Alvarado because she was not a party.

¶ 69    Section 508(b) requires a trial court to impose sanctions for two types of misconduct. First, if proceedings for enforcement of a court order are brought against a party and the court finds that party's failure to comply with the order was without compelling cause or justification, the court must require that party to pay the opposing party's attorney fees. 750 ILCS 5/508(b) (West 2022). Second, if "a court finds that a hearing under [the Act] was precipitated or conducted for any improper purpose, the court shall allocate fees and costs of all parties for the hearing to the party

*or counsel* found to have acted improperly." (Emphasis added.) *Id.* Improper purposes include "harassment, unnecessary delay, or other acts needlessly increasing the cost of litigation." *Id.*

¶ 70    We review section 508(b) sanctions for an abuse of discretion. *In re Marriage of Harrison*, 388 Ill. App. 3d 115, 120 (2009). A trial court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the court's view. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24.

¶ 71    The trial court imposed sanctions against Alvarado pursuant to the first provision of section 508(b), which allows a court to sanction a party. See 750 ILCS 5/508(b) (West 2022). Alvarado was not a party; she was an attorney and a witness. However, we can affirm the trial court's ruling on any basis apparent from the record regardless of whether the trial court relied on that basis. *Mullins v. Evans*, 2021 IL App (1st) 191962, ¶ 25. The second provision of section 508(b), which allows a court to sanction "counsel," applies to Alvarado. See 750 ILCS 5/508(b) (West 2022). Alvarado's testimony and first appearance gave rise to disqualification proceedings that needlessly increased litigation costs.

¶ 72    Furthermore, the trial court's July 6, 2023, order was a complete and immediate disqualification of Alvarado. It stated that "Attorney Maria Alma Alvarado and M. Alma Alvarado, Attorney at Law, P.C. *** is disqualified as counsel for Respondent Diego Lozano for the Cook County Circuit Court case number 2020 D 005727 and for the First District Appellate Court Case number 1-23-0953, *instanter*." There was no basis for Alvarado to believe she could file another appearance on Lozano's behalf even if she purported to "limit" the scope of that appearance pursuant to Illinois Supreme Court Rule 13(c)(6) (eff. Jan. 1, 2023). Nothing in Rule 13(c)(6) overrides an attorney's court-ordered disqualification. Ill. S. Ct. R. 13(c)(6) (eff. Jan. 1,

2023). But Alvarado filed a second appearance anyway, which caused contempt proceedings and again needlessly increased litigation costs. The trial court did not abuse its discretion in imposing section 508(b) sanctions against Alvarado.

¶ 73 To the extent appellants argue that the trial court should not have imposed section 508(b) sanctions because it purged the contempt findings, that is incorrect. A finding of contempt is not necessary for a court to impose sanctions under section 508(b). *In re Marriage of Berto*, 344 Ill. App. 3d 705, 717 (2003).

¶ 74 Appellants do not challenge the section 508(b) sanctions against Lozano. To the extent they suggest Lozano cannot afford to pay those sanctions, a party's ability to pay is irrelevant to sanctions under section 508(b). *In re Marriage of Budorick*, 2020 IL App (1st) 190994, ¶ 67 n.2. Accordingly, we affirm the trial court's imposition of section 508(b) sanctions against both Alvarado and Lozano.

¶ 75                              2. Section 508(a) and 506(b) Fees

¶ 76 Pursuant to section 508(a), the trial court ordered Lozano to pay Hipes's attorney fees incurred in the appeal of *Hipes I*, which totaled $12,075. Pursuant to section 506(b), the trial court ordered Lozano to pay the child representative's fees, which totaled $39,405.39. Lozano argues that he cannot afford to pay these attorney fees.

¶ 77 Under section 508(a), "[t]he court from time to time, after due notice and a hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for *** the other party's costs and attorney's fees." 750 ILCS 5/508(a) (West 2022). Under section 506(b), a trial court must require payment of a child representative's reasonable and necessary attorney fees "by either or both parents." *Id.* § 506(b). We review attorney fee awards

under both sections for an abuse of discretion. *Heroy*, 2017 IL 120205, ¶ 13; *In re Marriage of Soraparu*, 147 Ill. App. 3d 857, 864 (1986).

¶ 78    Fee awards under both sections must be based on the petitioner's inability to pay attorney fees and the respondent's ability to do so. To be entitled to attorney fees under section 508(a), Hipes had to show that (1) she was unable to pay her own attorney fees and (2) Lozano was able to pay her attorney fees. See *Heroy*, 2017 IL 120205, ¶ 30; see also *In re Marriage of Knight*, 2024 IL App (1st) 230629, ¶ 46 ("The party seeking attorney fees must establish inability to pay and the other person's ability to do so."). The same ability-to-pay analysis applies to the child representative's fees under section 506(b). *McClelland v. McClelland*, 231 Ill. App. 3d 214, 228 (1992). "In determining the proper allocation of the fees and costs of the child representative, the trial court considers the total circumstances of both parents, including their financial resources and relative ability to pay." *In re Marriage of Patel*, 2013 IL App (1st) 112571, ¶ 147. "The facts must establish one party's greater ability to pay and the other party's inability to pay the fees." *Id.* A party is unable to pay attorney fees when doing so would undermine his or her financial stability. *Heroy*, 2017 IL 120205, ¶ 19.

¶ 79    Section 503(j) of the Act (750 ILCS 5/503(j) (West 2022)) governs the ability-to-pay analysis. *Heroy*, 2017 IL 120205, ¶ 20. Section 503(j), in turn, instructs the court to apply the factors for dividing marital property listed in section 503(d) (750 ILCS 5/503(d) (West 2022)). *Id.* § 503(j)(2); *Heroy*, 2017 IL 120205, ¶ 20. Relevant here, these factors include (1) the dissipation and value of marital property; (2) the parties' economic circumstances; (3) the parties' occupations, amount and sources of income, vocational skills, employability, estate, liabilities, and needs; (4) custodial provisions for children; and (5) the parties' opportunities for future acquisition

of capital assets and income. 750 ILCS 5/503(d) (West 2022)). Causing unnecessary litigation is not one of the statutory factors. *Id.*

¶ 80    In this case, there are assets that can pay some of the section 508(a) and 506(b) attorney fees, as the trial court ordered. These funds already exist in known amounts and locations. Hipes's attorney's IOLTA account holds $4,269.96 on Lozano's behalf, and Lozano expects $1,674.51 in tax refunds, for a total of $5,994.47 that can pay Hipes's attorney fees. Additionally, $16,171.47 in Hipes's retirement account that would go to Lozano under the terms of the dissolution judgment will instead pay the child representative's fees. We order that these funds will pay the section 508(a) and 506(b) fees as the trial court ordered. If these amounts have changed, the trial court may modify its attorney fee award as necessary.

¶ 81    Beyond these existing assets, the parties have no realistic ability to pay attorney fees. As determined by the trial court, Hipes's attorney fees total $12,075, and the child representative's fees total $39,405.39, totaling $51,480.39. Hipes's gross annual income is $72,651, and Lozano's is $40,811. Hipes is responsible for F.L.'s care and expenses, and Lozano pays child support. The parties' other expenses cover mostly daily necessities and debt payments. It appears that the parties have little discretionary income. Based on their income and expenses, neither party can afford to pay attorney fees. In this scenario, ordering contribution to attorney fees is improper. See *In re Marriage of Jaster*, 222 Ill. App. 3d 122, 128-29 (1991) (the trial court properly denied attorney fees under section 508(a) where "neither party had the ability to pay the reasonable attorney fees that had been charged"). The following reasoning from *In re Marriage of Krivi*, 283 Ill. App. 3d 772 (1996), in which the respondent's gross annual income was $56,100, applies to this case:

"Because respondent has virtually no liquid assets and little money left over each month after paying his expenses, respondent would either have to refinance his home, take out a loan, or sell off assets he needs, like his car and household appliances, in order to pay off $19,088.19 in attorney fees. Inflicting financial ruin on the party being asked to pay attorney fees is no more appropriate than requiring the fee-seeking spouse to suffer financial ruin.

\*\*\*

Cases like the instant case are always the most difficult to resolve because the evidence shows that neither party is in strong financial condition. Petitioner has failed to show her inability to pay and respondent's ability to pay. This case could also be fairly characterized as one in which the financial circumstances of both parties are substantially similar in that neither party is particularly able to pay attorney fees. Where the financial circumstances of both parties are substantially similar, an award of attorney fees may be an abuse of discretion." *Krivi*, 283 Ill. App. 3d at 785.

¶ 82      That is the case here. Lozano does not have the ability to pay $51,480.39 in section 508(a) and 506(b) attorney fees. That is more than 100% of his gross annual income. It is "grossly unfair" to require a party to pay "attorney fees [that are] well in excess of one year of h[is] gross income." *In re Marriage of Brooks*, 138 Ill. App. 3d 252, 266 (1985). A party may be able to pay $50,000 in attorney fees if he makes $200,000 a year (see, *e.g.*, *Skalla v. Skalla*, 2024 IL App (1st) 220394-U, ¶¶ 25-29), but that is almost five times Lozano's gross income. Even subtracting the fees paid from IOLTA funds, tax refunds, and retirement account distributions, Lozano would still have to pay $29,364.45 in section 508(a) and 506(b) fees, which is approximately 72% of his gross annual

income. Lozano also does not have a greater ability to pay than Hipes, who earns almost twice as much as he does. See *Patel*, 2013 IL App (1st) 112571, ¶ 147.

¶ 83    We have found no authority upholding section 508(a) or 506(b) fee awards in which the party with *lesser* income had to pay the attorney fees of the party with greater income. Therefore, we order that Lozano will not be required to pay section 508(a) or 506(b) fees beyond what the existing assets set out above cover.

¶ 84    We acknowledge Lozano's side of the case drove up attorney fees in this case. Hipes's attorney and the child representative had a duty to advocate for their clients, just as Lozano's attorneys did. We understand the trial court judge's desire to hold Lozano responsible for driving up attorney fees by ordering him to pay those fees. However, unlike sanctions under section 508(b), fault for increasing litigation is not among the statutory factors that govern the ability-to-pay-analysis that applies to sections 508(a) and 506(b) (see 750 ILCS 5/503(d) (West 2022)) and is therefore irrelevant to our consideration of the parties' ability to pay section 508(a) and 506(b) fees.

¶ 85    We also acknowledge that this resolution is not ideal for Hipes's attorney or the child representative, who will receive approximately 41% of their awarded fees. But ordering Lozano to pay the remainder of the fees would undermine his financial stability, which is improper. See *Heroy*, 2017 IL 120205, ¶ 19.

¶ 86    The trial court's conclusion that Lozano has the ability to pay all of Hipes's and the child representative's attorney fees was inaccurate in several respects. First, when reviewing Lozano's financial affidavit, the court remarked that there was no "dramatic change in *** Lozano's financial situation." But the ability-to-pay analysis does not ask whether Lozano's financial

situation dramatically changed compared to some point in the past. Rather, it asks whether requiring Lozano to pay Hipes and the child representative's attorney fees would undermine his financial stability going forward based on factors such as his income, expenses, assets, and liabilities. See *id.* ¶ 30; 750 ILCS 5/503(d), (j), 508(a) (West 2022). The only rational answer to that question is that it would.

¶ 87    Additionally, the trial court found that Lozano has "the resources and ability to pay appellate fees pursuant to [section] 508(a) [because] his mother paid for his attorneys fees and performed legal work on the appeal and post decree matters." That does not follow. The fact that Lozano's mother paid for his attorneys several years ago does not mean that Lozano can pay more than $50,000 of Hipes's and the child representative's attorney fees going forward. It means that Lozano has never been able to afford attorneys. Alvarado's involvement in this case did not cause money to appear in Lozano's bank account. It only put Lozano further in debt and caused the section 508(b) sanctions, which he must pay.

¶ 88    While there was evidence that Lozano spent approximately $4,300 on gambling in the past, that was not sufficient to require him to pay more than $50,000 (or even $29,000) in attorney fees going forward. Lozano's gambling was an unwise use of his limited funds, but that does not overcome his nearly 2 to 1 income disparity with Hipes. Lozano does not have the ability to pay 100% of Hipes's attorney *and* the child representative's fees.

¶ 89    Accordingly, we affirm the section 508(a) and 506(b) fee awards to the extent they will be or already have been paid from IOLTA funds, tax refunds, and retirement account distributions. We reverse the remainder of the section 508(a) and 506(b) fee awards that would require payment from Lozano going forward due to his inability to pay.

¶ 90     However, nothing in this opinion limits the trial court's or this court's ability to impose further sanctions for frivolous litigation or attorney misconduct if necessary. Such sanctions would not involve an analysis of any party's ability to pay attorney fees (see *Budorick*, 2020 IL App (1st) 190994, ¶ 67 n.2), and we would review them for an abuse of discretion (see *Harrison*, 388 Ill. App. 3d at 120).

¶ 91     Although we find that the trial court erred in ordering Lozano to pay all of Hipes's and the child representative's attorney fees, we do commend the trial court for its overall thoughtfulness, thoroughness, and patience in this fiercely contested and complex case.

¶ 92     We need not consider appellants' complaints regarding allegedly duplicative billing and the trial court's modification of the dissolution judgment. These arguments apply to section 508(a) and 506(b) fees that Lozano was ordered to pay, and Lozano did not raise either of these arguments in the trial court. Therefore, he has forfeited these objections. See *In re Marriage of Epting*, 2012 IL App (1st) 113727, ¶ 27.

¶ 93                              III. CONCLUSION

¶ 94     For the foregoing reasons, we affirm the trial court's disqualification of Alvarado. We do not consider the trial court's contempt findings because they are moot. We affirm the section 508(b) sanctions against Alvarado and Lozano. We affirm the section 508(a) and 506(b) attorney fee awards to the extent they will be or already have been paid from IOLTA funds, tax refunds, and retirement account distributions. We reverse the remainder of the section 508(a) and 506(b) awards based on Lozano's inability to pay.

¶ 95     Affirmed in part and reversed in part.

*In re Marriage of Hipes*, 2025 IL App (1st) 240601

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-D-5727; the Hon. Marita C. Sullivan, Judge, presiding. |
| **Attorneys for Appellant:** | Michael G. DiDomenico, Sean M. Hamann, and Lillian M. O'Neill, of Lake Toback DiDomenico, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Jill M. Peters, of Law Offices of Jill M. Peters, LLC, of Chicago, for appellee. |