2026 IL App (1st) 231533-U

No. 1-23-1533, 1-24-0502, 1-24-1426, 1-24-2371 (cons.)

Order filed May 29, 2026

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of Cook County, |
| ALAN L. BUCHMAN, | ) | Domestic Relations Division. |
| | ) | |
| Petitioner-Appellant, | ) | No. 2011 D 002768 |
| | ) | |
| and | ) | Honorable |
| | ) | Gregory E. Ahern Jr., |
| DIANE T. BUCHMAN, | ) | Judge, presiding. |
| | ) | |
| Respondent-Appellee. | ) | |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not abuse its discretion by holding petitioner in contempt where he willfully violated an order or by awarding attorney fees where petitioner filed frivolous motions that needlessly increased the cost of litigation. We lack jurisdiction, however, to review the interim fee award.

¶ 2    Petitioner Alan Buchman appeals from seven orders entered in post-dissolution proceedings following his divorce from respondent Diane Buchman. At issue is (1) whether the circuit court abused its discretion by holding petitioner in contempt for not complying with a pay *instanter* order because petitioner believed he already complied with the order; (2) whether the

circuit court abused its discretion in ordering petitioner to pay respondent's attorney fees for the contempt proceedings where petitioner immediately purged the contempt; (3) whether the circuit court abused its discretion by awarding respondent attorney fees for defending against petitioner's changed circumstances motion because the motion was not frivolous and did not contain false pleadings; (4) whether the circuit court abused its discretion by ordering petitioner to reimburse respondent for their son's high school parking space because it was not an education-related expense; (5) whether the circuit court abused its discretion by awarding respondent interim attorney fees to defend against petitioner's appeal because respondent has the financial resources to pay her own attorneys; (6) whether the circuit court erred in denying petitioner's motion to reconcile agreed activity payments because the circuit court was required to enforce the parenting coordinator's recommendation; and (7) whether the circuit court abused its discretion by awarding respondent attorney fees for petitioner's motion to reconcile agreed activity payments because the motion was not brought to harass respondent or increase litigation costs. For the following reasons, we dismiss petitioner's appeal from the interim fee award for lack of jurisdiction but affirm in all other respects.

¶ 3                                    I. BACKGROUND

¶ 4        Petitioner Alan Buchman and respondent Diane Buchman were married in 2002 and had two sons together. Petitioner worked as a gastroenterologist, and respondent worked in the home full-time. Petitioner filed for dissolution of marriage in 2011, and the marriage was dissolved in 2014. Following the dissolution, the parties' sons lived with petitioner in his Glencoe home, and respondent moved to downtown Chicago with some weekend and holiday parenting time. This arrangement lasted for eight years. In 2022, respondent moved to an apartment in Northbrook. The

parties entered a new parenting arrangement, splitting time equally. At this time, respondent worked full-time as a paralegal with a gross annual income of around $80,000, and petitioner still worked as a gastroenterologist with a gross annual income of around $400,000. In setting up the new parenting arrangement, the parties disputed child support and other parenting matters. The circuit court led lengthy negotiations, culminating in a December 2022 order which has remained in effect through this appeal.

¶ 5     The December 2022 order provided that the parties would continue with a week-on, week-off parenting schedule. The order outlined that petitioner "shall be responsible for all education-related expenses for the children." Additionally, "[e]ffective October 1, 2022," the order required petitioner to pay "his monthly child support obligation in the amount of $2,500.00 as well as an additional $800.00 for activities." The $800 monthly payment for the children's activities was based on an estimate of the children's existing activity expenses. Since this was just an estimate, the order provided that at the end of each year, respondent was required to provide petitioner with an accounting to prove her activity expenditures. If respondent did not spend a minimum amount on the children's activities each year, petitioner was entitled to reimbursement. The circuit court ordered the accounting to take place on an annual basis because the "parties anticipate that the activity expenditures *** may vary on a month-to-month basis depending upon the availability of instructors, children's wellness, participation in sports teams, and other similar circumstances."

¶ 6     For outstanding activity payments that petitioner owed under the new regime, minus a one-time reimbursement that respondent owed petitioner, the order explained that petitioner owed "$1,288.50 for his combined October and November 2022 additional $800 activity obligation." The order stated petitioner "shall pay [respondent] the aforesaid $1,288.50 *instanter*."

¶ 7    Despite the order to pay *instanter*, a month after the circuit court's order, petitioner had not yet paid respondent $1,288.50. Thus, in January 2023, respondent filed a motion to hold petitioner in contempt for violating the order. After the parties filed written responses, the circuit court held an evidentiary hearing. Petitioner testified that he did not pay respondent the $1,288.50 for outstanding activity payments after the circuit court entered its order because petitioner believed that amount was already covered by his previous payments to respondent. The circuit court concluded petitioner willfully violated the order and held petitioner in contempt. Upon the circuit court's oral contempt ruling, petitioner electronically paid respondent $1,288.50 while still in the courtroom. Later, the circuit court ordered petitioner to pay respondent's attorney fees for the contempt proceedings. Petitioner appealed the contempt and the fee award.

¶ 8    Eight months later, in August 2023, petitioner moved the circuit court to reduce his $800 monthly activity payment due to "changed circumstances." Petitioner argued that his sons abandoned some of their activities and would not be participating in as many activities in the new school year, so his monthly activity payments should be reduced accordingly. The circuit court held a hearing on petitioner's motion and denied it, explaining that petitioner's concern was covered by the reconciliation provisions in the December 2022 order, which specifically contemplated variation in monthly activity expenses. The circuit court held that petitioner's motion was frivolous and awarded respondent attorney fees for defending against the motion. Months later, at a hearing on the fee petition, the circuit court allowed petitioner to present testimony and again argue the issues in his changed circumstances motion. The circuit court again concluded the motion was frivolous and awarded respondent attorney fees. Petitioner appealed the fee award.

¶ 9 Around the same time, the parties' eldest son won a lottery for a student parking space at his high school. Both sons attended the same school, so the eldest could use the parking space to transport both sons to school. Over petitioner's refusal, respondent paid the parking permit expense: $1,732. Respondent sought reimbursement from petitioner, arguing that under the December 2022 order, petitioner was solely responsible for all education-related expenses. When petitioner refused to reimburse her, respondent filed a motion to hold petitioner in contempt. Petitioner argued, in part, that the parking space was an optional transportation expense and not education related. After a hearing, the circuit court concluded that the parking space was an education-related expense and granted respondent's motion. The circuit court ordered petitioner to reimburse respondent $1,732 for the parking space, and petitioner appealed.

¶ 10 After petitioner filed several notices of appeal, respondent moved the circuit court to award her interim attorney fees to defend the appeal. Respondent argued she could not afford the attorney fees, and petitioner argued respondent had sufficient financial resources to defend the appeal. After a hearing, the circuit court sided with respondent and awarded her $15,000 in interim attorney fees to defend against petitioner's appeal. Petitioner appealed the interim fee award.

¶ 11 Later, in December 2023, petitioner filed a motion concerning respondent's accounting of activity expenses. As required by the December 2022 order, respondent sent petitioner her accounting of the previous year's activity payments in June 2023. Respondent's accounting showed she spent $5,843.75 on the children's activities. After receiving the accounting, petitioner forwarded the materials to a parenting coordinator previously appointed by the circuit court. Petitioner asked the parenting coordinator to consider respondent's expenses, along with some of petitioner's activity expenses, and recommend how much petitioner should be reimbursed. In July

2023, the parenting coordinator prepared a letter recommending that petitioner receive $1,374.65 in reimbursement. In December 2023, petitioner filed his motion with the circuit court "to reconcile agreed activity payments and usage," attaching the parenting coordinator's letter. Petitioner argued the letter was binding on the circuit court, so petitioner was entitled to $1,374.65 in reimbursement. The circuit court heard argument and denied petitioner's motion. The circuit court reasoned that under the December 2022 order, respondent was required to spend a minimum of $5,600 on activities for the relevant period. Since respondent spent $5,843.75, petitioner was not entitled to any reimbursement under the order's plain language. At another hearing, respondent argued she was entitled to attorney fees for responding to petitioner's motion because it was intended to harass her and increase litigation costs. The circuit court agreed and awarded attorney fees. Petitioner appealed both the denial of his motion for reimbursement and the fee award. This court consolidated petitioner's numerous timely appeals. Ill. S. Ct. R. 303 (eff. July 1, 2017); R. 304 (eff. Mar. 8, 2016).

¶ 12                                    II. ANALYSIS

¶ 13    As a threshold matter, respondent argues that petitioner's appeal should be stricken for deficient citations to both the record and legal authority. Illinois Supreme Court Rule 341 requires the appellant's brief to contain a statement of facts "with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Similarly, Rule 341 states an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7). "Furthermore, this court may, in its discretion, strike a brief and dismiss an appeal based on the

failure to comply with the applicable rules of appellate procedure." *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12.

¶ 14 Respondent is correct that petitioner's briefs are deficient. Entire argument sections are without a single citation to legal authority or the record. However, we decline to dismiss petitioner's appeal where, with the help of respondent's briefs, petitioner's arguments are easily disposed of on appeal. See *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005) ("The striking of an appellate brief, in whole or in part, is a harsh sanction and is appropriate only when the alleged violations of procedural rules interfere with or preclude review." (Internal quotation marks omitted.)).

¶ 15                    A. Contempt – Pay *Instanter* Order

¶ 16 Petitioner argues that the circuit court erred by holding him in contempt for not complying with the order to pay respondent $1,288.50 *instanter*. Specifically, petitioner argues that he did not willfully violate the order because he had a good faith belief that he paid most or all that amount before the order was entered. Respondent argues contempt was proper where petitioner willfully refused to pay respondent because he disagreed with the order and the amount. "Whether a party is guilty of contempt is a question of fact for the trial court, and a reviewing court should not disturb the trial court's determination unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion." (Internal quotation marks omitted.) *In re Marriage of Knoll*, 2016 IL App (1st) 152494, ¶ 50.

¶ 17 "Generally, civil contempt occurs when a party fails to do something ordered by the trial court, resulting in the loss of a benefit or advantage to the opposing party." *In re Marriage of Charous*, 368 Ill. App. 3d 99, 107 (2006). The party seeking contempt initially bears the burden to

"prove by a preponderance of the evidence that the alleged contemnor has violated a court order." *Id.* "The burden then shifts to the alleged contemnor to show that noncompliance with the court's order was not willful or contumacious ***." *Id.* Willful noncompliance is an intentional and knowing refusal to obey a court order. *Welch v. City of Evanston*, 181 Ill. App. 3d 49, 55 (1989). Contumacious conduct is "calculated to embarrass, hinder, or obstruct a court in its administration of justice" or conduct "lessening the authority and dignity of the court or bringing its administration of law into disrepute." *In re Marriage of Fuesting*, 228 Ill. App. 3d 339, 349 (1992).

¶ 18    Here, the circuit court ordered petitioner to pay respondent $1,288.50 *instanter* for October and November 2022 activities (each $800), minus a one-time reimbursement respondent owed petitioner for tennis registration ($311.50). Petitioner does not dispute that he did not comply with the circuit court's order to pay respondent $1,288.50 *instanter*. Rather, he argues his noncompliance was not willful. At the evidentiary hearing, however, petitioner repeatedly testified that he did not pay the $1,288.50 *instanter* because he disagreed with the amount that the circuit court ordered him to pay:

> "I'm not paying double. The order makes it double, which is inappropriate. It did not—it was not retroactive, okay, and it can't make me pay double over what I've already paid. It just had—it gets paid once.
> ***
> Well, because I—because I had already paid what was in my mind supposed to be paid, and that's how I still feel today. I paid for the activities that were done, and when that order became effective, I started paying for activities that weren't ever done, because we have the reconciliation that takes care of that.
> ***
> Your honor heard discussion. He didn't actually see the evidence; he didn't actually see the invoices. I had them in Court.
> ***
> Yes. It was a mistake. The numbers are incorrect. The numbers, you can—again, you can file 30 days, whatever, to change the order, but the numbers are incorrect forever.
> ***
> I specifically disagreed when you came out of chambers because the numbers were

incorrect. I continued under the prior order of January 2022."

Petitioner also testified that he engaged in self-help and chose not to pay respondent because respondent was not complying with other agreements and orders:

"So she is trying to enforce an order that she, herself, has violated. The order was that she is supposed to take the kids to their activities. She didn't do that, and she is trying to enforce this order that she has violated more than me.
***
Well, it was an agreed order, and so to have an agreed order, both sides have to comply.
***
I don't believe that I owed any of it, and, in fact, she owes me for overpayment from the summer.
***
[H]er part of the agreement was to take the kids to the activities. I have proof that they didn't go. One tennis lesson from September 1st to the end of November on her time, no tennis drills at all, zero, and we have an exhibit we could show for that as well. *** My position was—is also that not only is it wrong but it also—both parties—in an agreed order, both parties have to uphold the agreement, and I took self-help because she wasn't taking the kids to the activities."

After hearing testimony from both parties, the circuit court concluded that where petitioner refused to pay $1,288.50 *instanter* because he disagreed with the order and engaged in self-help, petitioner willfully violated the circuit court's order:

"I'm finding him in contempt for not paying that. The testimony was it was self-help. The testimony was you didn't agree with it. You wanted the other order entered, which I did not enter. I rejected these arguments back in November. So it's contemptuous ***."

¶ 19 Petitioner's testimony shows that after the circuit court ordered him to pay $1,288.50 *instanter*, he made the conscious and measured decision not to pay because he disagreed with the circuit court's calculations and believed respondent was not upholding her obligations. "Choosing to engage in unilateral self-help and cease payment on a court-ordered *** obligation because you are confident that the court will find in your favor is both willful and contumacious." *In re*

*Marriage of Otero*, 2023 IL App (1st) 211452-U, ¶ 47; see *In re Marriage of Casey*, 2017 IL App (1st) 161240-U, ¶ 56 (concluding a party's decision to prorate their court-ordered payment was "self-help" and evidenced "willful noncompliance with the clear, unambiguous terms of the parties' [agreement]").

¶ 20    On appeal, petitioner reiterates several arguments he raised in the circuit court regarding the "accounting dispute" and his "good faith belief" that he paid part of the ordered amount before the circuit court entered the pay *instanter* order. But even if petitioner had a "good faith belief" that the circuit court's order was erroneous, his conduct is still contemptuous where he testified that he intentionally ignored the order. See *Welch*, 181 Ill. App. 3d at 54-55 ("Plaintiffs admit that they purposefully refused to obey the 1979 court order, but argue that they did so in good faith because they believed the court order to be erroneous. Therefore, they should not be found in contempt. We disagree. It is well-established that a litigant's disagreement with the court's decision does not excuse that party from the obligation to follow that decision. *** Thus, by their own admission, their refusal to obey the order was intentional and knowing, which, by definition, constitutes willful conduct.").

¶ 21    Moreover, petitioner's accounting concerns were specifically addressed in the circuit court's same order: "In the event that [respondent] does not expend $5,600.00 [,] *** [respondent] shall refund to [petitioner] the difference between the $5,600.00 and the amount she has actually paid for said children's activities during the period of October 1, 2022, through and including May 31, 2023." The $1,288.50 pay *instanter* order was for activities during October and November 2022, which clearly fall within the plain language of this reconciliation provision.

¶ 22    Petitioner also argues that he never "refused" to pay, he was simply "confused" on what he still owed and needed a "resolution" of the issues so he would not pay twice. He argues a contempt motion was "hardly necessary" to get him to pay and "a simple request to the court for a status appearance to get clarification" would have quickly resolved the matter. But petitioner made no such request. He never sought to resolve his confusion. In fact, he filed nothing in the circuit court. He simply ignored the order and only paid when he was found in contempt six months later. Given petitioner's testimony, the circuit court's finding that petitioner willfully disobeyed the order was not against the manifest weight of the evidence, and the circuit court did not abuse its discretion in finding petitioner in contempt. See *In re Marriage of Ramos*, 126 Ill. App. 3d 391, 398 (1984) ("[T]he question whether failure to comply with a judgment was willful is one of fact [citation], and the trial court's finding thereon will not be disturbed unless it is contrary to the manifest weight of the evidence."); *Shamrock Chicago Corp. v. Wroblewski*, 2019 IL App (1st) 182354, ¶ 29 ("If the trial court's factual findings are *** consistent with the manifest weight of the evidence, we review the contempt order for an abuse of discretion, considering the relevant facts.").

¶ 23                    B. Fee Award – Pay *Instanter* Order

¶ 24    Petitioner argues that the circuit court abused its discretion by awarding respondent attorney fees for enforcing the pay *instanter* order through contempt proceedings. Petitioner argues that the fee award was an improper sanction for indirect civil contempt because it was punitive. Petitioner also argues that the sanction was improper because petitioner immediately purged the contempt by paying respondent $1,288.50 electronically in court after the circuit court's oral contempt ruling. Respondent argues that the circuit court did not abuse its discretion in awarding

fees because section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/508(b) (West 2022)) mandated the award of attorney fees after the circuit court held petitioner in contempt. "An award of attorneys' fees will not be overturned in the absence of a clear abuse of discretion by the trial court." *In re Marriage of Michaelson*, 359 Ill. App. 3d 706, 715 (2005).

¶ 25    Under section 508(b) of the Illinois Marriage and Dissolution of Marriage Act, when a party proceeds to enforce an order or judgment, the circuit court "shall order" the award of attorney fees "when the court finds that the failure to comply with the order or judgment was without compelling cause or justification." 750 ILCS 5/508(b) (West 2022). "[F]inding a party in contempt for failing to comply with a court order implies a finding the failure to comply was without cause or justification," and the award of attorney fees is mandatory. (Internal quotation marks omitted.) *In re Marriage of Putzler*, 2013 IL App (2d) 120551, ¶ 38; *Michaelson*, 359 Ill. App. 3d at 715-16. The mandatory fee award is intended to "eliminate the financial burden on a custodial parent that is the consequence of an enforcement action." *In re Marriage of Berto*, 344 Ill. App. 3d 705, 716-17 (2003). Otherwise, "there would be no advantage in enforcement and the delinquent party could escape his obligations under the prior court order." *Id.* at 717.

¶ 26    Here, the circuit court's finding of contempt necessarily implies that petitioner's failure to comply with the order was without cause or justification. Thus, the circuit court was required to award attorney fees pursuant to section 508(b). See *Michaelson*, 359 Ill. App. 3d at 715 ("Under section 508(b), a court has no discretion as to whether to award attorneys' fees ***."); *Marriage of Putzler*, 2013 IL App (2d) 120551, ¶ 39 ("[A] finding that a failure to comply with a court order was 'willful' is equivalent to a finding that noncompliance was without compelling cause or justification."). Accordingly, the circuit court did not abuse its discretion in awarding attorney fees.

¶ 27    Petitioner argues that the award of attorney fees was improper because petitioner purged the contempt within 10 minutes of the circuit court's ruling. Respondent, however, was still entitled to attorney fees for enforcement of the order even though respondent purged his contempt. See *In re Marriage of Wassom*, 165 Ill. App. 3d 1076, 1081 (1988) (explaining that a contemnor's later purge of contempt does "not excuse [them] from the obligation imposed by section 508(b)" because the party seeking contempt is "entitled to attorney fees at the time the trial court granted him relief by enforcing the *** order"); see also *In re Marriage of Hipes and Lozano*, 2025 IL App (1st) 240601, ¶ 73; *In re Marriage of Bernat*, 2014 IL App (2d) 121212-U, ¶ 29; *In re Marriage of Alden*, 2014 IL App (2d) 121046-U, ¶ 54.

¶ 28    Petitioner also argues that since respondent chose to proceed by civil contempt, she is subject to that body of law, not the Illinois Marriage and Dissolution of Marriage Act. However, respondent's contempt petition quoted and cited section 505(b) of the Illinois Marriage and Dissolution of Marriage Act, which explicitly incorporates contempt. See 750 ILCS 5/505(b). She also referenced section 508(b), which mandates attorney fees. *Id.* § 508(b). Where respondent proceeded under these provisions of the Act, petitioner's argument that the fee award was an improper punishment for civil contempt is without merit.

¶ 29    Lastly, petitioner argues that since the fee award would have been an improper contempt sanction, the fee award was purportedly imposed for respondent's preparation of a second contempt petition which the circuit court denied. Petitioner's argument has no basis in the record; the circuit court clearly awarded attorney fees for both contempt petitions filed by respondent, only one of which petitioner appeals. Moreover, in addition to the discussed mandatory fee award for the successful contempt petition, the circuit court was also authorized to award fees for the

contempt petition it denied where it found the petition was necessary to enforce an order. See *id.* § 508(a)(2) ("The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. \*\*\* Awards may be made in connection with the \*\*\* enforcement or modification of any order or judgment under this Act.") Thus, the circuit court did not abuse its discretion.

¶ 30                  C. Fee Award – Change in Circumstances Motion

¶ 31     Petitioner argues that the circuit court's award of attorney fees to respondent in connection with petitioner's changed circumstances motion is void, baseless, and should be reversed. Petitioner argues that the circuit court failed to make the mandatory findings to support the award, that petitioner's motion was not a false pleading, and that his motion was not frivolous or designed to harass. Respondent argues that the circuit court sufficiently explained its reasons for awarding attorney fees and that the award was appropriate under section 508(b) of the Act or under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) because petitioner acted with an improper purpose. We review the circuit court's award of attorney fees pursuant to section 508(b) or Rule 137 for an abuse of discretion. *Marriage of Hipes and Lozano*, 2025 IL App (1st) 240601, ¶ 70; *In re Marriage of Schneider*, 298 Ill. App. 3d 103, 109 (1998).

¶ 32     Section 508(b) of the Illinois Marriage and Dissolution of Marriage Act instructs the circuit court to award sanctions if it finds any hearing was precipitated or conducted for an improper purpose:

> "If at any time a court finds that a hearing under this Act was precipitated or conducted for any improper purpose, the court *shall* allocate fees and costs of all parties for the hearing to the party or counsel found to have acted improperly. Improper purposes include, but are

not limited to, harassment, unnecessary delay, or other acts needlessly increasing the cost of litigation." (Emphasis added.) 750 ILCS 5/508(b).

Similarly, the "plain language of Rule 137 authorizes a court to impose sanctions against a party or counsel for filing a motion or pleading that is not well grounded in fact; that is not supported by existing law ***; or that is interposed for any improper purpose." *McCarthy v. Taylor*, 2019 IL 123622, ¶ 19. "The purpose of Rule 137 is to prevent the filing of frivolous lawsuits." *Enbridge Pipeline (Illinois), LLC v. Temple*, 2019 IL App (4th) 150346, ¶ 53.

¶ 33     At the first hearing on petitioner's changed circumstances motion, he argued that his $800 monthly activity payments, as outlined in the December 2022 order, should be reduced because the children had reduced their participation in the agreed activities during the summer and their activities would be reduced during the upcoming fall semester. Petitioner also argued that certain activity expenses "should cease on March 1st" because one of the children would likely stop tennis lessons then. Petitioner stated that those expenses "may or may not come back next summer after the tennis team season is over. We don't know."

¶ 34     After hearing argument, the circuit court denied petitioner's motion and awarded respondent attorney fees. The circuit court explained that petitioner continued to raise the same arguments about activity payments that were squarely within the reconciliation provisions of the December 2022 order, and those provisions were designed to prevent these types of motions:

> "I have repeatedly said that—in fact, this December 16, 2022 order is exactly what Counsel's argument is. It's to prevent this day.
> ***
>
> People quit instruments all the time. Things change. That was the whole basis for the accounting in paragraph 4. We built in—if [petitioner] was right and she didn't spend this money and, like, you know, as he said, windfalled it or pocketed it, she would be giving it back to him ***.
> ***

[The reconciliation provisions] contemplated this exact scenario, everything you went through for that very reason. It even contemplates March.

And let's—it's really important. It says: [respondent] shall at least expend a total of $5,600 for the minors' activities, including, but not limited to, personal training, tennis, music lessons, and/or comparable children's activities.

Okay. That is the flexibility that if—so if the kid wanted to pick up a different instrument tomorrow, he quit one instrument and wanted to play a different instrument tomorrow, if she wanted to pay for those things on her time, she could do it and use that money and gives an accounting to [petitioner] on June 15th every year. ***

This is exactly what we tried to prevent. It's trying to [run her] out the fees and this truly frivolous, frivolous motion. I can't emphasize enough how frivolous it was and how much this was contemplated; contemplated in that December order, negotiated, agreed upon."

¶ 35    Several months later, after respondent submitted a detailed fee petition, the circuit court allowed petitioner to again argue against the award of attorney fees and present testimony. In his testimony, petitioner acknowledged that respondent must make an accounting of activity payments under the December 2022 order and reimburse petitioner if necessary. Petitioner initially testified that the order requires respondent to spend the money on only the listed activities. Then, after reading the order, petitioner conceded that the order states that the money can be spent on "comparable activities." After petitioner's testimony, the circuit court concluded that petitioner's motion was frivolous, previously negotiated at length, and covered by the December 2022 order that explicitly contemplated the children changing activities and provided a mechanism for petitioner to be refunded.

¶ 36    The circuit court thoroughly considered the issue by allowing the parties to present argument at two hearings, in addition to their written motions, and hearing petitioner's testimony even after the circuit court's initial ruling awarding attorney fees. See *In re Marriage of LaRocque*,

2018 IL App (2d) 160973, ¶ 111 ("When reviewing a decision on a motion for sanctions, the primary consideration is whether the decision was informed, was based on valid reasoning and follows logically from the facts." (Internal quotation marks omitted.)). The circuit court ultimately determined that petitioner needlessly brought this motion irrespective of the circuit court's prior ruling in the December 2022 order. Indeed, the record demonstrates that petitioner continued to relitigate small deviations in activities even though these deviations were considered by the parties and the circuit court when creating the activity payment plan and reconciliation provisions. As the circuit court explained, the reconciliation provisions were designed to decrease litigation costs, but petitioner litigated them anyway.

¶ 37    The circuit court did not specify whether it was awarding attorney fees under section 508(b) or Rule 137. However, given the record, the circuit court did not abuse its discretion under either provision in concluding petitioner's motion was for an "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ill. S. Ct. R. 137(a); 750 ILCS 5/508(b); see *In re Marriage of Lay*, 2016 IL App (2d) 151049-U, ¶ 36 ("The issues [respondent] raised in his pleadings were consistent with a desire more for enforcement for its own sake than for enforcement for his benefit or that of the children. *** [W]e agree with the trial court that [respondent] needlessly increased the costs of litigation.").

¶ 38    Petitioner argues that the circuit court failed to make the mandatory findings required by Rule 137. But the circuit court did as it was required when it "set forth with specificity the reasons and basis" of the sanction on the record. Ill. S. Ct. R. 137(d). Petitioner also argues that his motion was not a false pleading, but that was not the basis of the award of attorney fees.

¶ 39   Additionally, petitioner argues that his motion cannot be frivolous when based on actual reduced activities. Petitioner argues that unless these reductions were false or irrelevant, his motion cannot be frivolous. But petitioner ignores that Rule 137 and section 508(b) cover filings made for improper purposes, not just ones that lack a basis in fact or law. Ill. S. Ct. R. 137(a); 750 ILCS 5/508(b). Thus, the circuit court did not abuse its discretion in awarding respondent attorney fees related to petitioner's changed circumstances motion.

¶ 40                                    D. Parking Space

¶ 41   Petitioner argues that the circuit court abused its discretion in ordering him to reimburse respondent $1,732 for the high school parking space. Petitioner argues that the parking space is a transportation expense that respondent is responsible for on her parenting time. Respondent argues the circuit court did not abuse its discretion because the parking space is an educational expense that petitioner must pay for pursuant to the December 2022 order. While matters of contract interpretation are generally reviewed *de novo*, *In re Marriage of Dynako*, 2021 IL 126835, ¶ 15, the parties agree that, here, we review the circuit court's interpretation of its own order for an abuse of discretion. *In re Marriage of Javadi and Marmarchi*, 2022 IL App (4th) 210735-U, ¶ 36.

¶ 42   Under the December 2022 order, petitioner is responsible for all education-related expenses:

> "ALAN shall be responsible for all education-related expenses for the children, including, but not limited to, school registration, driver's education, educational courses, activities, school lunches, school supplies (but not duplicates), and tutoring. *To the extent that any education-related expense is not listed here, ALAN shall be responsible for that cost*." (Emphasis added.)

The circuit court held a hearing on respondent's motion seeking reimbursement for the parking space. At petitioner's request, the circuit court allowed petitioner to question respondent

extensively under oath despite the circuit court's commentary that testimony "probably wasn't necessary" to the interpretation issue. After hearing testimony and argument, the circuit court concluded that the parking space was an education-related expense. The circuit court reasoned that the parking space was provided by the school, the fee was listed in the school's handbook, and even though it is an optional fee, some of the other enumerated education-related expenses are also optional:

> "So we talked about what's in the handbook as an optional expense, right. You said that. You've agreed to it. So it's education related.
>
> So if you even look within your own paragraph of what binds you in this case, school lunches aren't mandatory. They could pack a lunch. You don't have to buy it. But if they do get it, you have to pay for it. We actually talked about that.
>
> Tutoring, not necessary. They can still take the classes, do what they got to do. Tutoring is extra.
>
> And so this is education-related. It is through the school. It is a lottery by the school. ***
>
> It's education-related. It's in the handbook as an option—an optional fee, as is a lot of the things that are covered by this. But the language here is pretty clear, and it's not a stretch."

¶ 43    In coming to its ruling, the circuit court considered testimony, the arguments of both parties, and prior discussions about the order. The circuit court also reviewed the plain language of the provision and the enumerated educational expenses. See *In re Marriage of Karafotas*, 402 Ill. App. 3d 566, 571 (2010) ("A court must first look to the language of the contract alone, *** given its plain and ordinary meaning ***." (Internal quotation marks omitted.)); *National Fire Insurance Co. of Hartford & Continental Insurance Co. v. Visual Pak Co.*, 2023 IL App (1st) 221160, ¶ 58 ("The interpretive canon *ejusdem generis*, which literally means 'of the same kind,' seeks to identify a common theme among a list of items, a theme that would provide a limitation

on the more general, catchall language that follows that list."). The circuit court's conclusion that a school-provided parking space is an education-related expense is not so unreasonable as to be an abuse of discretion. *In re Commissioner of Banks and Real Estate*, 327 Ill. App. 3d 441, 476 (2001) ("An abuse of discretion exists where no reasonable person would take the position adopted by the trial court [citation], or where the trial court acts arbitrarily, fails to employ conscientious judgment, and ignores recognized principles of law.").

¶ 44    Petitioner argues that the circuit court provided no justification for why he should be required to pay for the parking space even though he disapproved of the expense. But the provision does not require petitioner to agree to the education-related expenses, and petitioner cites no authority for that proposition. Petitioner also argues he should only have to pay 50% for the parking space. Under the provision, however, petitioner is solely financially responsible for all education-related costs. Thus, the circuit court did not abuse its discretion in ordering petitioner to reimburse respondent for the parking space.

¶ 45                    E. Interim Fee Award – Defense of Appeal

¶ 46    Petitioner argues that the circuit court abused its discretion by awarding respondent interim attorney fees to defend petitioner's appeal. Petitioner argues that respondent has the resources to pay her own attorney fees and the fee award was an improper penalty. Respondent argues the circuit court did not abuse its discretion where she showed she could not afford her attorney fees. Although not raised by either party, we must first determine whether we have jurisdiction to hear petitioner's appeal from the interim fee order. See *In re Marriage of Link*, 362 Ill. App. 3d 191, 192 (2005) ("While none of the parties to this appeal has raised the issue of our jurisdiction, a

reviewing court has a duty to consider *sua sponte* its jurisdiction and to dismiss an appeal if jurisdiction is wanting.").

¶ 47    Illinois Supreme Court Rule 304 (eff. Mar. 8, 2016) allows parties to appeal from certain judgments and orders that do not dispose of an entire proceeding. "To be final and appealable, an order must dispose of the rights of the parties, either upon the entire controversy or upon some definite and separate part of it." (Internal quotations marks omitted.) *Lubben v. Lubben*, 135 Ill. App. 3d 302, 305 (1985) (quoting *Oak Brook Bank v. Citation Cycle Co.*, 45 Ill. App. 3d 1053, 1057 (1977)). Thus, when an order leaves a matter pending, it is not a final order. *Id.*

¶ 48    Section 508(a) of the Illinois Marriage and Dissolution of Marriage Act allows for "[i]nterim attorney's fees and costs" to be awarded in connection with the "defense of an appeal of any order or judgment under this Act, including the defense of appeals of post-judgment orders." 750 ILCS 5/508(a)(3). "This provision allows the court to award interim attorney fees during the pendency of the proceedings and make a final award of attorney fees once the proceedings have concluded." *In re Marriage of Gabriel and Shamoun*, 2020 IL App (1st) 191840, ¶ 10. The interim fee award is "strictly temporary in nature" and "remains open to modification." (Internal quotation marks omitted.) *Id.* ¶¶ 12, 17. Thus, "[a]n interim order for attorney fees is not a final or appealable order." *In re Estate of Gagliardo*, 391 Ill. App. 3d 343, 348 (2009); *Marriage of Gabriel*, 2020 IL App (1st) 191840, ¶ 12.

¶ 49    Here, respondent moved for an award of "temporary attorneys' fees and costs" pursuant to section 508(a), regarding interim fees. The circuit court granted "the interim fee motion" and ordered petitioner to pay $15,000. The circuit court's interim fee award is inherently a temporary, non-final order. Thus, the order is not appealable, and we lack appellate jurisdiction to consider

petitioner's appeal from this order. Petitioner's contentions "are matters that the circuit court will be able to reassess when entering any final fee award." *Marriage of Gabriel*, 2020 IL App (1st) 191840, ¶ 17.

¶ 50                    F. Motion to Reconcile Agreed Activity Payments and Usage

¶ 51    Petitioner next argues that the circuit court erred in denying his motion to reconcile agreed activity payments and not enforcing the parenting coordinator's determination that petitioner was entitled to $1,374.65 in reimbursement. Petitioner argues that the parenting coordinator's "ruling" was self-executing and enforceable under Illinois Supreme Court Rule 909 (eff. May 24, 2023). Respondent argues that the circuit court properly denied petitioner's motion because petitioner was not entitled to reimbursement for activities under the plain language of the circuit court's December 2022 order. Further, respondent argues that Illinois Supreme Court Rule 909 is merely an enabling rule and the parties' parenting coordinator instead acts pursuant to Cook County Circuit Court Rule 13.10 (Jan 6. 2016). We review a circuit court's interpretation of its own order for an abuse of discretion, *In re Marriage of Javadi*, 2022 IL App (4th) 210735-U, ¶ 36, and we interpret Supreme Court rules *de novo*. *In re Marriage of Arjmand*, 2024 IL 129155, ¶ 20.

¶ 52    As discussed, the circuit court's December 2022 order required petitioner to pay $800 a month to respondent for their children's various activity expenses. Further, the order entitled petitioner to reimbursement at the end of the accounting period only if respondent did not spend a minimum amount on activities ($5,600.00 for the period at issue here):

> "3. Regarding [petitioner's] $800.00 additional monthly payment obligation to [respondent] for the period of October 1, 2022 through May 31, 2023, [petitioner] *shall at least expend a total of $5,600.00* for the minor children's activities including, but not limited to, personal training, tennis, and music lessons (and/or comparable children's activities). This $5,600.00 is calculated as the product of $700.00 per month and the eight (8) months included in said time period. ***

4. Each year on June 15th beginning with June 15, 2023, [respondent] shall provide [petitioner] with proof of her activity expenditures detailed in paragraph 3 of this order. ***

5. *In the event that [respondent] does not expend $5,600.00* by May 31, 2023 on the activities for the time period described herein, or on comparable children's activities during said time period, *[respondent] shall refund to [petitioner] the difference between the $5,600.00 and the amount that she has actually paid* for said children's activities during the period of October 1, 2022 through and including May 31, 2023." (Emphasis added.)

Thus, respondent was required to spend at least $5,600.00. If she did not, petitioner was entitled to some reimbursement.

¶ 53    In June 2023, respondent provided petitioner with her accounting that showed she expended $5,843.75, more than the minimum required $5,600.00, for activities between October 1, 2022, and May 31, 2023. Six months later, in December 2023, petitioner filed his motion to reconcile agreed activity payments arguing that he was entitled to $1,374.65 in repayment for some activity funds that respondent did not utilize and reimbursement for some of petitioner's expenses on respondent's parenting time. Petitioner attached a letter from the parenting coordinator supporting his calculations.

¶ 54    After a hearing, the circuit court denied petitioner's motion and concluded that the plain language of the December 2022 order was clear and binding: so long as respondent showed she spent at least $5,600, which she did, petitioner was not entitled to any reimbursement. Further, the circuit court explained that the order clearly set the reimbursement terms and gave no authority to the parenting coordinator:

"All she had to do is show she paid it, and she paid it, so your motion is denied. ***

I'm telling you that under the plain language of the December 16, 2022, agreed order that we did, it was basically an additional child support payment. *** What I'm

saying is under this order, the plain reading of it, [the parenting coordinator] was not the arbitrator of activities, including, but not limited to."

Given the plain language of the December 2022 order which only entitled petitioner to reimbursement if respondent failed to spend at least $5,600.00, the circuit court did not abuse its discretion in denying petitioner's motion requesting repayment.

¶ 55 Petitioner argues, as he did before the circuit court, that the parenting coordinator's determination was a "ruling" under Illinois Supreme Court Rule 909 (eff. May 24, 2023), and it was error for the circuit court to not enforce it. Petitioner references several provisions of Rule 909 and argues the Rule imposes certain mandates on the parties and the circuit court. All of petitioner's arguments, however, are based on a fundamental mischaracterization of Rule 909. On its own, Rule 909 imposes no requirements on parties or the circuit court. Rather, under Rule 909, "[e]ach judicial circuit *may* adopt rules for the conduct of parenting coordinators that are consistent with this Rule ***." (Emphasis added.) Ill. S. Ct. R. 909(a) (eff. May 24, 2023); see, *e.g.*, Ill. S. Ct. R. 909(e), (f), (g), (i) (setting guidelines for what types of duties a parenting coordinator can be authorized to perform).

¶ 56 Rule 909 is an enabling rule that allows judicial circuits to create their own local rules for entirely optional parenting coordinator programs. See Amelia Buragas, *Avoiding Parent Traps*, 111 Ill. Bar J. 10, 11 (2023) ("[A] key component of ISCR 909 is that it is an enabling rule rather than a mandate. *** Circuits have the ability to effectively do what they think is in the best interest of their system and their litigants *** [and] are not required to adopt a parenting coordination program ***." (Internal quotation marks omitted.)). Moreover, when it passed, Rule 909 did not "alter the system currently used in Cook County." See *Supreme Court Rules Committee Proposal Public Hearing*, Ill. S. Ct. Bd./Comm'n/Comm./Task Force 11 (Mar. 29, 2023) (statements of Vice

Chair Larry Rogers and Nancy Shafer), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/15827f2f-c727-4380-abea-342f37af2178/Public%20Hearing%20Transcript.pdf. Thus, Rule 909 did not affect Cook County's existing rules, which clearly state that the "parenting coordinator shall not have any decision-making authority which is the sole province of the court." Cook County Cir. Ct. R. 13.10(ix) (Jan 6. 2016). So contrary to petitioner's suggestions, the circuit court was not required to enforce the parenting coordinator's letter. The December 2022 order governed activity payments and any reconciliation at issue. Based on the plain language of that order, the circuit court did not abuse its discretion in denying petitioner's motion seeking reimbursement.

¶ 57        G. Fee Award – Motion to Reconcile Agreed Activity Payments and Usage

¶ 58     Petitioner argues that the circuit court abused its discretion by awarding respondent attorney fees for responding to petitioner's motion to reconcile agreed activity payments and usage. Petitioner argues his motion was a matter of first impression regarding Illinois Supreme Court Rule 909 so was not frivolous. Petitioner also argues the circuit court had no basis to find he was harassing respondent where he was trying to compel her to perform her obligations and he tried to resolve the issue through the parenting coordinator in lieu of litigation. Petitioner also argues he could not have intended for respondent to incur legal fees when petitioner is routinely required to pay her fees. Respondent argues the circuit court did not abuse its discretion because petitioner's motion was clearly for an improper purpose: harassment and running respondent out of litigation with fees. Respondent argues that petitioner's ill intent is demonstrated by petitioner paying thousands of dollars to both his attorney and the parenting coordinator for a motion seeking less than $1,400 in repayment. We review the circuit court's award of attorney fees pursuant to

section 508(b) of the Illinois Marriage and Dissolution of Marriage Act for an abuse of discretion. *Marriage of Hipes and Lozano*, 2025 IL App (1st) 240601, ¶ 70.

¶ 59 Section 508(b) instructs the circuit court to award sanctions if it finds any hearing was precipitated or conducted for an improper purpose including harassment and needlessly increasing the cost of litigation:

> "If at any time a court finds that a hearing under this Act was precipitated or conducted for any improper purpose, the court shall allocate fees and costs of all parties for the hearing to the party or counsel found to have acted improperly. Improper purposes include, but are not limited to, harassment, unnecessary delay, or other acts needlessly increasing the cost of litigation." 750 ILCS 5/508(b).

¶ 60 After a hearing on the fee petition, the circuit court again explained that the activity payments and reconciliation structure in the December 2022 order were the result of extensive negotiation. The circuit court ordered petitioner to pay the attorney fees, reasoning that petitioner's motion was brought to harass respondent and increase litigation costs:

> "It is—and I've said this before—complete harassment because of your divorce before, right.
>
> So let's say she was completely unreasonable in the divorce before, okay. I'm assuming you're right. You have not—you've been harassing her with litigation, filing things that I even told you beforehand you have no basis, okay—[.]
>
> You spent more money on paying [the parenting coordinator], paying your lawyer, paying fees in these cases that you could have spent half the money and been done with everything. You don't want to give her a penny."

¶ 61 With petitioner's motion, he continued to litigate the same provision in the December 2022 order that the circuit court previously ruled on multiple times. Petitioner continued to litigate the activity payments and reconciliation even though the circuit court repeatedly ruled that the plain language of the order was controlling and petitioner's arguments were without merit. See *In re Marriage of Mercier*, 2025 IL App (1st) 241075-U, ¶ 26 (affirming an award of attorney fees

where the appellant "unnecessarily prolonged [the] litigation for over two years and needlessly increased the litigation costs by repeating the same argument, already twice rejected by the trial court"); *In re Marriage of Soman and Cwik*, 2023 IL App (1st) 220548-U, ¶ 44 (upholding the circuit court's fee award where the appellant "made identical claims several times by this point in the proceedings, and the circuit court expressly found that his conduct in filing third and fourth petitions *** was 'harassing and needlessly increased the cost of litigation' "). The circuit court also determined that petitioner's motion was brought for an improper purpose where petitioner incurred legal fees that far exceeded the amount he attempted to recover in reimbursement. See *Marriage of Lay*, 2016 IL App (2d) 151049-U, ¶ 36 (explaining petitioner needlessly increased the costs of litigation when he acted not for his own benefit but rather for "enforcement for its own sake"). The circuit court's fee award was not so unreasonable as to constitute an abuse of discretion. See *In re Marriage of O'Malley ex rel. Godfrey*, 2016 IL App (1st) 151118, ¶ 60 ("An abuse of discretion occurs when the ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." (Internal quotation marks omitted.)).

¶ 62    Petitioner argues he did not intend to run up respondent's legal fees because he is frequently ordered to pay respondent's fees and respondent has admitted she does not pay her attorney. However, the inquiry is, in part, whether petitioner "needlessly increas[ed] the cost of litigation." 750 ILCS 5/508(b). By litigating this motion, petitioner continued to increase the overall cost of litigation for himself, respondent, and the court. As both parties incur attorney fees, the cost of the litigation increases regardless of who pays those fees. Moreover, section 508(b) instructs the circuit court to award fees if it finds any party has "acted improperly." *Id.* The circuit court did not abuse its discretion in making that determination here.

¶ 63                                III. CONCLUSION

¶ 64    The appeal of the interim fee award is dismissed for want of jurisdiction; in all other respects, the judgment of the circuit court of Cook County is affirmed.

¶ 65    Affirmed; appeal of the interim fee award is dismissed.